## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Rachel Anderson, Brianne Bidochka, )
Kenneth Biggers, Sarah Blaylock, ) Case No. 20-cv-4648
Madison Clements, )
Kamari Evans, Johnae Farr, ) Judge Alonso
Stephanie Faynshteyn, Hayley Frank, )
Samantha Fuller, Lizeth Hurtado, )
Jessica Litavsky, Brittany Marrotta, )
Andrea Mascorro, Crystal McBride, )
Jessica Mercer, Alexandrea Miranda, )
Tashia Moore, Alexandra Pearce, )
Bobbie Peck, Jennifer Quinn, Kialah Reed, )
Darryl Rodriguez, Destiny Rucker, )
Sonia Santellanes, )
Andonia Subsits, Autumn Sullivan, )
Caitlyn Temesvary, Danielle Uphoff, )
Karena Villegas, Bailey Ward, )
Russell Williamson, and Susan Winfield, )
 )
   Plaintiffs, )
    v. )
 )
Twin Restaurant Oakbrook, LLC )
Twin Restaurant Orland Park, LLC )
Twin Restaurant Wheeling, LLC )
Twin Restaurant Warrenville, LLC )
Twin Restaurant Holding, LP )
Twin Restaurant Holding, LLC )
Twin Restaurant, LLC )
Twin Restaurant Franchise, LLC )
Twin Restaurant Investment Co. II, LLC )
Consolidated Restaurant Operations, Inc. )
Twin Restaurant Investment Company )
Twin Restaurant Frisco, LLC )
TP Franchise Ventures I, LLC )
Twin Restaurant IP LLC )
Front Burner Restaurants, LP, )
and Doe Corporation, )
 )
   Defendants. )

# FIRST AMENDED COMPLAINT

Plaintiffs Rachel Anderson, Brianne Bidochka, Kenneth Biggers, Sarah Blaylock, Madison Clements, Kamari Evans, Johnae Farr, Stephanie Faynshteyn, Hayley Frank, Samantha Fuller, Lizeth Hurtado, Jessica Litavsky, Brittany Marrotta, Andrea Mascorro, Crystal McBride, Jessica Mercer, Alexandrea Miranda, Tashia Moore, Alexandra Pearce, Bobbie Peck, Jennifer Quinn, Kialah Reed, Darryl Rodriguez, Destiny Rucker, Sonia Santellanes, Andonia Subsits, Autumn Sullivan, Caitlyn Temesvary, Danielle Uphoff, Karena Villegas, Bailey Ward, Russell Williamson and Susan Winfield complain about defendants Twin Restaurant Oakbrook, LLC , Twin Restaurant Orland Park, LLC, Twin Restaurant Wheeling, LLC, Twin Restaurant Warrenville, LLC, Twin Restaurant Holding, LP, Twin Restaurant Holding, LLC, Twin Restaurant, LLC, Twin Restaurant Franchise, LLC, Twin Restaurant Investment Co. II, LLC, Consolidated Restaurant Operations, Inc., Twin Restaurant Investment Company, Twin Restaurant Frisco, LLC, TP Franchise Ventures I, LLC, Twin Restaurant IP LLC, Front Burner Restaurants, LP, and Doe Corporation, (hereinafter "Twin Peaks") as follows:

1.      In this lawsuit, Twin Peaks faces claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Pregnancy Discrimination Act of 1978, 42 US.C. § 2000e(k) *et al.*, 42 U.S.C. § 1981 and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et al.*

## The Establishment of The Twin Peaks Enterprise

2.      Twin Peaks Restaurants' formula for success is the sexual exploitation of young women. Run very much like a commercial sex ring, torn from a pimp's playbook, it preys on vulnerable young women.

3.      Twin Peaks developed an image where, on the outside, it appears to be a place where young women happily work in revealing clothing while earning large tips. In reality, young women

2

across America are being demeaned, abused and exploited for the financial and sexual benefit of men.

4. Twin Peaks was founded in 2005, by Randy DeWitt and Scott Gordon, because, according to Dewitt, "Hooters just wasn't racy enough…We did not think the food was very good and the brand was stuck in the 1980's, but not in a cool retro way."

5. As a result, the duos conceptualized "much more than your typical sports bar" establishment where one can "truly embrace the Lodge Mantality."

6. Shortly after its establishment, Twin Peaks recruited Hooters' male executives Coby Brooks (whose father founded Hooters), Rick Akan, Joe Hummel, Roger Gondek, Clay Mingus and Jim Tessmer. The men joined the enterprise in one way or another, including but not limited to investing in Twin Peaks, or taking executive positions with Twin Peaks' largest franchisee, La Cima Restaurants, LLC ("La Cima").

**Twin Peaks "Leaders"**

7. According to its most recent version of its website, Twin Peaks "leadership" consists of seven men and one woman.

8. Twin Peaks has one female in a "leadership" position who is in charge of recruiting, an essential role similar to other commercial sex rings that profit off exploiting young women. Lexi Burns, Vice President of Talent Management, is responsible for "recruiting, onboarding, and training programs that engage the millennial generation."

9. Also similar to other commercial sex rings, Burns is additionally responsible for ensuring that franchise owners "follow the playbook" of Twin Peaks "very structured brand," to make sure there is no deviation from its model for success.

10. As a result of Twin Peaks' corporate structure, reinforced by former Hooters executives and lawyers, the enterprise has found great success across America with its winning

formula of appearing to be legitimate business where young women voluntarily work in a sexualized environment, but in reality, the young women were recruited into abusive, hostile and illegal working conditions that violate this country's law that protect against discrimination and harassment.

## The Public Face of Twin Peaks

11.     According to CEO Joe Hummel, Twin Peaks is different than other "breastaurants" because, "Everybody has done little bits and pieces of it, but no one has done the whole program." This "whole program" includes:

     a.   Made-from-scratch menu items that will even satisfy an "axe man," which includes a "quickie" for lunch;

     b.   A "familiar warmth a lumberjack would expect walking into their local lodge; and

     c.   Wall-to-wall TV's to watch sports while drinking Twin Peaks very own signature beer.

12.     Most importantly, the "essential ingredient" for the "perfect lodge experience" is that it provides "Twin Peaks Girls," defined as:

     a.  Beautiful faces;

     b.  Equal parts friendly, engaging and attentive;

     c.  Ensuring that every guest feels like a regular; and,

     d.  The reason customers consistently come back for more.

13.     The perfect Twin Peaks Girl is thin but not too thin, fit but not too fit, has large breasts but not too large, wears perfectly-applied, natural-looking makeup not too natural and not too overdone, long, thick hair but not too long, dangerously short shorts but not indecently short, exposed breasts but not indecently exposed, and, very happy and fun.

## Recruiting of Young Women

14.     According to Twin Peaks website, a "career" as a Twin Peaks Girl is defined as:

> The iconic buffalo plaid stands for more than just serving great food and ice-cold beer with a smile. It's an invitation to be you, to be unique and to bring a one-of-a-kind experience to every guest, every time. Twin Peaks is searching for driven Twin Peaks Girls, who set goals, celebrate accomplishments and are ready to have a great time at work.

15.     Twin Peaks lures high school teenagers to young women in their mid-twenties with enticing marketing phrases, including but not limited to:

a.   nothing compares to a Twin Peaks Girl;

b.   amazing perks;

c.   flexible scheduling for school;

d.   fun work environment;

e.   no side-work;

f.   amazing tips;

g.   a chance to win shopping sprees and vacations;

h.   national modeling opportunities; and,

i.   no restaurant experience required.

16.     As a result of its job representations, Twin Peaks is very successful at luring young women into its doors for a job.

17.     Twin Peaks then uses the following hiring practices:

a.   First, a manager requires the applicant try-on a Twin Peaks Girl plaid uniform, just like the one shown in all of its advertising and recruiting materials;

b.   Next, the manager takes pictures of the applicant's body from the front, side, back. The purpose of these pictures, according to management, is that they must send the pictures to corporate "for approval." Unbeknownst to the woman, these pictures

are stored, to be used at a later date, to abuse her;

c.  If corporate approves of the pictures of the applicant's appearance and body, she is immediately hired.

d.  Upon acceptance of the offer, the new Twin Peaks Girl is provided with one plaid shirt, and a money belt. She is told the must purchase her own short shorts, a rhinestone belt, and a pair of winter boots to complete her uniform.

e.  The final step: Management has the new Twin Peaks Girl sign a "Twin Peaks Girl Acknowledgement Agreement" that will later be used to tell her, when she complains about sexual harassment, a hostile work environment or other illegal work conditions, "You signed up for this."

**The Working Twin Peaks Girl**

18.    Once the young woman becomes a Twin Peaks Girl, she learns that the environment is anything but as-advertised.

19.    Within the first few days on the job, management quickly learns about why she needs the job. This Twin Peaks Girl believes management cares about her but, in reality, this information will be used to make her pick between her job and her young child, schooling, or her second job.

20.    Then Twin Peaks begins to groom the new Girl by destroying her self-esteem with incessantly negative comments about her body, particularly that she is fat:

a.  Every day before the shift begins, the Twin Peaks Girls are ordered to line-up for a group picture.

b.  If a Twin Peaks Girl is pregnant, she is not allowed to be in the picture; instead, she must stand to the side, in an oversized black t-shirt, that Twin Peaks requires any Girl who is pregnant to wear during her shifts;

c.  Then, management sends the group picture to corporate, where their bodies'

imperfections are judged from afar;

    d.  After the shift begins, Twin Peaks managers walk the floor with a grading sheet, assigning a "tone grade" to the Girls' bodies, giving a 1-10 score on the Girls' back, arms, stomach and legs, for a maximum 40 points. This practice is subjective and entirely based on how a manager views that Girl's body on that day.

    e.  The final tone grade, along with other unexplained points, provides the Girl's ranking.

21.    Girls with the higher rank get to pick the most lucrative sections first, leaving Girls with the lower rankings in the slow, less-lucrative sections, sometimes leaving the low-ranking girls with no tips at the end of a shift.

22.    As a result of this nebulous ranking system, management further exploits the Girls by engaging in favoritism. Twin Peaks Girls who sleep with managers, or do drugs with managers are also awarded higher ranking, more flexible scheduling, and lax "image and costume standards."

23.    In a further effort to destroy the Girl's self-confidence, if a girl asks management why she has a low tone grade, she is told it is because she is fat, needs to "tone up," or she needs to compare herself to her co-worker's body with the highest grade.

24.    Twin Peaks keeps a poster of the perfect Twin Peaks Girl taped to the wall of the "Glam Room" – a doorless dressing room next to the kitchen – to remind the Girls of the company's definition of beauty.

25.    Another grooming tactic is a fake "concern" about the Girls' weight. One practice is the "fat talk" where management orders a Girl into the office, tells her that she is fat in a concerned tone, then pulls up her initial hiring photographs and tells her that she no longer looks like she did when she was hired, pointing out non-existent flaws. Twin Peaks then expects this Twin Peaks Girl to return to her shift with a smile of self-confidence.

26.     Management also places Twin Peaks Girls on "probation" for being fat. After being called into the office, the Girl is threatened with termination if she does not lose weight within 30-60 days. She is then required to sign a paper agreeing to the probation, then go back onto the floor and work her shift with a smile of self-confidence.

27.     Other of Twin Peaks' hostile practices, applied to the Girls but not male employees, include but are not limited to:

    a.  Not allowing Girls to eat during their shift;

    b.  Limiting Girls to a "spa menu" – a restricted-calorie plate of grilled chicken breast and steamed vegetables;

    c.  Saying, "I guess you don't want a higher grade," when witnessing a Girl eating;

    d.  Requiring Girls to pay full price for regular menu items but allowing male staff to either eat for free or eat at a discounted rate;

    e.  Grabbing, poking, pinching, and pulling Girls' exposed body parts, particularly their hips and backs of their arms, while saying things including but not limited to, "You need to tone up;" and "This is why you don't have a higher grade;" and, "This is why you'll never work behind the bar."

**The Uniform**

28.     Upon hiring, the Twin Peaks Girl consents to wearing the as-advertised plaid uniform.

29.     Throughout the years, Twin Peaks has changed its plaid shirt, from a more conservative shirt without an exposed torso, to shirt that ties-up right under the breasts. Whatever the style at the time of hiring, the Girl accepts that the shirt provided to her is her uniform.

30.     The "Twin Peaks Girl Acknowledgement Agreement" does not, however, disclose that the Girl consents to purchasing and wearing lingerie and bikinis, or exposing her buttocks and

nipples.

31.     The Agreement also does not disclose that "costume parties" are actually panties parties for an entire week of the month. One themed "dress up" is Breast Cancer Awareness Week where Twin Peaks requires the Girls to purchase pink lacy lingerie and expose their breasts.

32.     These panties parties have very specific requirements that are also not disclosed in recruiting material, upon applying for the job, or in the acknowledgement agreement:

    a.   The Girl must purchase her own lingerie, without reimbursement;

    b.   She cannot wear the same lingerie more than once;

    c.   If her body is not exposed enough to management's liking, she is sent home to change and then return, sent home from her shift altogether, sent to the closest Walmart or Target to purchase different lingerie, or docked points from her grade.

33.     Twin Peaks represents that these "dress-ups" are "optional," leaving the male customer to think that the Girls are happily exposing their almost-naked bodies inside of a cold restaurant with concrete floors and bright lights. A reasonable person would believe that optional means having the option to dress in lingerie or wear the standard uniform. In reality, however, "optional" means that the Twin Peaks Girl has the option to either wear lingerie or not work for the week and thus not earn an income.

34.     Twin Peaks responds to Girls' complaints about dress-ups by saying things including but not limited to, "If you don't like it you can leave," and "You signed up for this." Sometimes Twin Peaks retaliated against Girls who objected to this harassment in ways that had financial consequences, such as by sending them home, docking their shifts or forcing them to go to nearby stores to buy new, more skimpy clothes – with their own money. Male employees are not forced to wear skimpy outfits as a condition of employment, let alone required to pay for them themselves.

35.     The environment Twin Peaks perpetuates is ripe for, and in fact did result in,

rampant sexual harassment and a hostile work environment in which men – ranging from the managers to the kitchen staff to the customers – felt free to touch them and say things to them without consequence.

36.     And it *was* without consequence. Girls were not told where to complain and, when they did were ignored, put off or, in some cases threatened or fired. Retaliation followed. Twin Peaks also retaliated against managers who complained or raised objections to the hostile work environment.

37.     Twin Peaks also, not surprisingly, discriminated against some of the plaintiffs due to their race or because, in the case of Kenny Biggers, because they perceived him to be gay.

**Twin Peaks Oakbrook Terrace**

38.     Defendant Twin Restaurant Oakbrook, LLC, is an is an Illinois Limited Liability Company authorized to do business in Illinois. Defendant Twin Restaurant Oakbrook, LLC is an "employer" for purposes of Title VII with regard to the Twin Peaks restaurant located in Oakbrook, Illinois.

39.     There was a hostile work environment at the Twin Peaks Oakbrook Terrace during the entire time the plaintiffs worked there. The institutionalized degrading and demeaning of women, as described above, contributed to that. At the Oakbrook Terrace location, harassment by the kitchen staff also contributed to this. The kitchen staff constantly harassed the Girls by cat-calling, whistling at them and making sexual jokes or innuendos. Management knew about, and in many instances witnessed this harassment by kitchen staff.

40.     At Oakbrook Terrace, like other locations, Twin Peaks forced women to work in lingerie, bikinis and similar skimpy outfits and forced them to pay for it as a condition of employment. Men had no such requirements. Management would penalize women financially for not wearing shirts or shorts that were revealing enough. Managers also made comments about

women's weight and sometimes would limit what they could eat during their breaks, requiring they only order from the "spa menu." Other times Twin Peaks refused to let women eat at all, denying them breaks and thus removing any opportunity they could have for eating.

41. Plaintiff Rachel Anderson worked as a Twin Peaks Girl at the Twin Peaks located in Oakbrook Terrace, Illinois between approximately August 1, 2017 through October 1, 2017. Ms. Anderson is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

42. Twin Peaks customers regularly sexually harassed Anderson, including but not limited to propositioning her for sex and touching her. This happened with the knowledge of, and sometimes in the presence of, Twin Peaks managers, who did nothing about it.

43. When Anderson complained about customer sexual harassment, she was retaliated against in ways including but not limited to management taking tables away from her during her shift and scheduling her for fewer shifts.

44. Twin Peaks managers sexually harassed Anderson, both through their words and conduct. As just one example, Twin Peaks manager Josh Kerbis touched her on the shoulder and said, "Your boobs look small today." When she objected to his conduct, he put his hand in her face and said, "Don't get your panties in a knot."

45. Twin Peaks also retaliated Anderson against for objecting to dress-ups in ways including but not limited to not allowing her to work her shift because she did not expose enough of her body to management's liking for a "breast cancer" lingerie dress-up.

46. Anderson eventually located a number to corporate and complained to Clay Mingus about workplace issues including but not limited to sexual harassment and unwelcome touching by management. When she returned to work, Kerbis called her a "fucking bitch" for going to corporate, then retaliated against her by demoting her from bartender to server then refusing her

request to transfer to another location, which resulted in her constructive discharge.

47.     Anderson then applied at Twin Peaks located in Warrenville, Illinois. When she followed-up on the status of her application, management told her that corporate placed her on a "Do Not Hire" list. She then contacted corporate again, and was told Mingus would get back to her but he never did and her additional calls were never returned.

48.     Plaintiff Brianne Bidochka worked as a Twin Peaks Girl at the Twin Peaks located in Orland Park, Illinois, approximately between July 2016 through October 2016, then at the Twin Peaks located in Oakbrook Terrace, Illinois approximately between December 2016 through January 2018. Ms. Bidochka is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

49.     Twin Peaks customers regularly harassed Bidochka but management refused to do anything about it. As just one example, one time, a regular the Girls nicknamed the "Zodiac Killer" because he scared them, gave her a book of women in sexual positions. When she reported it to her boss he refused to do anything about it.

50.     Twin Peaks retaliated against Bidochka for complaining about customer sexual harassment, including but not limited to sending her home early from her shift.

51.     Management contributed to the hostile work environment. Manager Juan Quiroz often commented on Bidochka's "sexy" big blue eyes while looking her up and down. Manager Josh Kerbis would comment and touch her body. Management constantly commented on her body and the bodies of the other Girls, as well as their weight. Twin Peaks often would not permit her to take a break to eat, even when working double shifts. Kerbis called her fat constantly.

52.     Bidochka wanted to complain, but she did not know where to go. Ultimately she was constructively discharged because she could no longer take the hostile work environment.

53.     Plaintiff Madison Clements worked as a Twin Peaks Girl at the Twin Peaks located

in Oakbrook Terrace, Illinois from, on or about October 1, 2017 until, on or about, April 1, 2018. Ms. Clements is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

54. Clements informed Twin Peaks that she had lupus and that she needed reasonable accommodations, such as flexible scheduling. Twin Peaks did not provide her with these reasonable accommodations. In one instance this resulted in her fainting in the dressing room, and instead of calling 911, Twin Peaks had her carried out the back door and had a manager drive her to the emergency room and dump her off. When Clements complained about managements' failure to provide her with a scheduling accommodation, Kerbis said her sickness was a "recurring problem," then completely removed her from the schedule.

55. Twin Peaks male customers regularly harassed Clements. All of this was going on in the presence of, and with the knowledge of, Twin Peaks management. As just one example, one time after she brought food to her table, the male customers grabbed her, held her down and licked her face. When she reported the incident to management, they refused to intervene.

56. Management also retaliated against Clements for complaining about customer sexual harassment in ways including but not limited to demoting her from server to hostess for a week.

57. Twin Peaks management also contributed to the hostile work environment. As just one example, Josh Kerbis would touch her and require she send him pictures of herself in lingerie.

58. Plaintiff Johnae Farr, who is African American, worked as a Twin Peaks Girl, at the Twin Peaks located in Oakbrook Terrace, Illinois from, on or about January 1, 2016 until, on or about, May 1, 2016. Ms. Farr is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

59. Twin Peaks customers constantly sexually harassed Farr, such as by touching her or grabbing her, calling the restaurant then moaning and pretend to masturbate. Management knew

about this harassment and it sometimes happened in their presence, yet most managers did nothing about it.

60.     Farr complained about the harassment and Twin Peaks told her it was her job to be a "nice hostess" and put up with it. Management also required she pose for pictures with customers, during which they would touch her. Twin Peaks also commented on and sought to police how her body looked. A manager named Cory placed her on a 90 day "fat" probation.

61.     Farr was also harassed on the basis of race. When an African American manager, Susan Winfield, was not working, managers picked on Farr, treating her differently, and worse, than her non-black colleagues.

62.     Management retaliated against Farr for objecting to compulsory lingerie dress-ups in ways including but not limited to removing her from her pre-scheduled shift on a lucrative UFC fight night. Management also retaliated against Ms. Farr for complaining about customer sexual harassment in ways including but not limited to demoting her from her pre-scheduled server shift to the hostess stand.

63.     Plaintiff Hayley Frank worked as a Twin Peaks Girl at the Twin Peaks located in Oakbrook Terrace, Illinois from, on or about, February 1, 2018 until, on or about, March 1, 2018. Ms. Frank is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

64.     Twin Peaks customers regularly sexually harassed Frank, including through unwanted touching. When she complained to management, her concerns were brushed off with statements to the effect of: it is not a big deal. Management also harassed Frank, making comments about her body and what she eats.

65.     When Frank became pregnant, Twin Peaks discriminated against her and harassed her, including but not limited to requiring she wear an oversized black shirt, not permitting her to

take breaks only allowing her to eat from the "spa menu," refusing to allow her to work in lucrative sections where she previously worked, and assigning her to less lucrative sections.

66. After Frank filed a charge of discrimination, Twin Peaks retaliated against her by refusing to re-hire her at its Warrenville location. After she had gone through most of the hiring process, a Twin Peaks manager said he just needed to confirm with corporate that she was eligible for rehire. He returned and said something to the effect of: "You filed an EEOC charge against us? I don't know if they will hire you back because you are a liability." From that point forward, no one called her back and management refused to take her calls. Finally, the manager took her call and said she could not have her job back.

67. Plaintiff Jessica Litavsky worked as a Twin Peaks Girl, at the Twin Peaks located in Oakbrook Terrace, Illinois from, on or about, December 1, 2015 until, on or about, January 1, 2018. Ms. Litavsky is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

68. Twin Peaks customers sexually harassed Litavsky constantly with lewd comments unwanted touching and propositioning her for sex in exchange for money. Management knew about this rampant customer harassment and sometimes witnessed this harassment but refused to do anything about it.

69. In fact, management contributed to the hostile work environment. One time, management ordered Litavsky onto a party bus, parked in the front of the restaurant. Inside of the bus, male customers threw money at her and demanded she dance on a stripper pole and offered her money in exchange for sexual favors. As another example, Manager Josh Kerbis touched Litavsky's body and commented on her weight. As yet another example, management required her to fraternize with corporate managers while wearing a bikini. Several managers required she send them pictures of her in lingerie or other dress-ups, or required she bring them in and model the outfits for them.

15

70.     When Litavsky complained to Twin Peaks about the hostile work environment, they retaliated against her, such as by lowering her tone grade scores or performance shift scores and altering her shifts in a way that impacted her income. For example, when she objected to the dress-ups, or asked to wear clothing that covered more of her body, Twin Peaks would take away her shift, take her off the schedule or threaten to fire her.

71.     Twin Peaks also refused to provide reasonable accommodations to address Litavsky's disabilities. Litavsky notified Twin Peaks that she had disabilities, including Rheumatoid Arthritis, Raynaud's Syndrome, ADD/ADHD and anxiety. Nevertheless, Litavsky could perform her job with reasonable accommodations, such as taking breaks to take her medication with food and water, wearing a glove to protect her hand, and being given breaks when her arthritis flared up. Twin Peaks failed to accommodate these disabilities, such as by refusing to permit her breaks or otherwise obstructing her attempts to take her medication, denying her breaks to accommodate her arthritis and not providing her with a replacement glove when the only one they provided went missing. As yet another example, when her arthritis caused severe swelling and she need to wear a knee brace, Twin Peaks refused to permit it and required she work without it.

72.     Twin Peaks also discriminated against Litavsky due to her disability, including but not limited to removing shifts from her, giving her shifts that were less lucrative, sending her home before her shift ended, lowering her tone grade scores and performance shift scores, stealing money from her tips, threatening her with firing, firing her and calling the police to cite her for trespassing when she returned to collect her final check.

73.     Twin Peaks also created a hostile work environment due to Litavsky's disability. Both managers and co-workers harassed her due to her disability. As just one example, management once publicly shamed her, posting the number of breaks she had taken – which she needed to take her medicine – in plain sight of co-workers and customers. As another example, managers mocked her

when she needed a break due to her arthritis, making comments like: "have you never worked on your feet before?" Management also harassed her by questioning her about whether she really needed the accommodations, such as by suggesting she might really be taking illegal drugs.

74.     The other bartenders also created a hostile work environment for Litavsky. Such harassment included questioning whether she really needed medication or had a disability, making harassing comments about her being bad at her job for taking breaks as an accommodation and complaining to management about her taking breaks as an accommodation. She alerted management to this harassment but Twin Peaks refused to do anything about it.

75.     In fact, Twin Peaks retaliated against Litavsky for requesting disability accommodations and complaining about the disability harassment, including but not limited to removing shifts from her, disciplining her for taking breaks, giving her shifts that were less lucrative, sending her home before her shift ended, lowering her tone grade scores and performance shift scores, stealing money from her tips, threatening her with firing, firing her and calling the police to cite her for trespassing when she returned to collect her final check. Plaintiff Brittany Marrotta worked as a Twin Peaks Girl, at the Twin Peaks located in Orland Park, Illinois from, on or about, January 1, 2019 until, on or about, June 1, 2019. She then worked at the Twin Peaks located in Oakbrook Terrace, Illinois, from, on or about June 1, 2019 until, on or about, July 1, 2019. Ms. Marrotta is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

76.     Twin Peaks customers regularly sexually harassed Marrotta, such as by catcalling, propositioning her for sex and threatening not to tip her unless she gave them her phone number. She complained to management about this harassment but was met with indifference and comments like: what did you expect? Management even forced her to take pictures with customers.

77.     Twin Peaks managers also contributed to the hostile work environment. As just one

example, manager Nicholas Rovy would text her about her appearance and ask that she go out with him.

78.    Marrotta was retaliated against for objecting to dress-ups, including but not limited to demanding she leave the restaurant to purchase lingerie or otherwise not work, and placing her in the less lucrative sections.

79.    Further, Twin Peaks retaliated against Marrotta for complaining about sexual harassment, including but not limited to forcing her to clock-out early from her shift after complaining about male customers videotaping her while she was in lingerie.

80.    Marrotta was constructively discharged after several attempts to complain proved to be futile.

81.    Plaintiff Andrea Mascorro worked as a Twin Peaks Girl, at the Twin Peaks located in Oakbrook Terrace, Illinois from, on or about, July 1, 2017 until, on or about, October 1, 2017. Ms. Mascorro is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

82.    Twin Peaks customers constantly sexually harassed Mascorro and she also was forced to endure harassment from management.

83.    Mascorro was retaliated against for objecting to dress-ups, including but not limited to being removed from the schedule for an entire week because she did not wear a Halloween costume that revealed her body to Josh Kerbis's liking; being threatened with termination for not exposing her buttocks; and removing her from her pre-scheduled shift and demoting her to the hostess stand for the shift. Additionally, she was required to text Josh Kerbis pictures of herself in lingerie for his approval.

84.    Further, Mascorro was retaliated against for complaining about customer sexual harassment, including but not limited to taking a table away from her and giving it to another table

thereby depriving her from her ability to earn a tip.

85.     Plaintiff Jennifer Quinn worked as a Twin Peaks Girl, at the Twin Peaks located in Oakbrook Terrace, Illinois from, on or about, September 1, 2016 until, on or about, March 1, 2018. Ms. Quinn is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

86.     Twin Peaks customers regularly sexually harassed Quinn and management refused to do anything about it. As just one example, a customer named Dave once touched her buttocks and when she reported it, Twin Peaks management stated, "that's just Dave."

87.     The managers themselves contributed to the hostile work environment. For example, Josh Kerbis once told Quinn to unzip the front of her costume so that her breasts were revealed. Manager Juan Quiroz said to her: you look like my fantasy. He also told her he watched her undress through the camera that was in "Glam Room." Managers also touched and commented on her body and weight.

88.     Quinn was retaliated against for complaining about sexual harassment and hostile work environment, including but not limited to having tables taken away from her and being demoted from server to hostess.

89.     After filing a charge of discrimination, Quinn applied for and was hired at another Twin Peaks location. However, she was then terminated because, they explained, it turned out she was on the "do not hire" list.

90.     Plaintiff Kialah Reed worked as a Twin Peaks Girl, at the Twin Peaks located in Oakbrook Terrace, Illinois from, on or about, June 19, 2017 until, on or about, November 28, 2017. Ms. Reed is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

91.     Twin Peaks customers regularly sexually harassed Reed, making sexually lewd

comments like, as just one example, "I want to see your titties." Management was well aware that customers were harassing the Girls but refused to do anything about it. When she complained they ignored her.

92. Management itself contributed to the hostile work environment. For example, Josh Kerbis would comment on Reed's body and weight, and yell at her in front of customers and coworkers that she was fat.

93. Kerbis was so harassing and abusive to Reed that he placed her in fear of her safety during a pre-shift meeting, then forced her to leave, depriving her of her ability to earn an income. She immediately attempted to contact corporate and complain however her calls were never returned. This hostile work environment resulted in Reed's constructive discharge.

94. Plaintiff Destiny Rucker worked as a Twin Peaks Girl at the Twin Peaks located in Oakbrook Terrace, Illinois from approximately July 2018 through November 2018 and prior to that at Orland Park from approximately April 2018 through July 2018. Ms. Rucker is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

95. Twin Peaks customers regularly sexually harassed Rucker, ranging from verbal harassment to being propositioned to unwanted touching. As just one example, one time a customer put money down her shirt. Management was aware of customers' sexual harassment but refused to do anything about it. One time when she complained to a manager about customer harassment, he responded something to the effect of, "Well, everyone makes comments so what's your problem?"

96. Management also retaliated against her for complaining about customer sexual harassment, including but not limited to reducing her tone grade.

97. Management contributed to the hostile work environment, commenting on women's bodies and their weight. Managers commented on how much Rucker ate as well as her body.

98.     Rucker was fired following an incident where she got her period and was bleeding through her shorts. When she asked if she could leave to change, she was told, "If you leave, don't come back."

99.     Plaintiff Andonia Subsits worked as a Twin Peaks Girl at the Twin Peaks located in Oakbrook Terrace, Illinois from, on or about, January 1, 2018 until, on or about, May 1, 2018. Ms. Subsits is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

100.    Twin Peaks customers regularly sexually harassed Subsits, up to and including putting their hands on her body. Management did nothing about it and in fact encouraged it, such as by requiring she take pictures with customers.

101.    Subsits was also sexually harassed by Twin Peaks management. For months, Manager Juan Quiroz sexually harassed Subsits and attempted to get her to have sex with him. When he did not take her hints that she was not interested in him, she told him that she was not interested in him sexually.

102.    After Subsits rejected Quiroz's sexual advances, Twin Peaks retaliated against her, including but not limited to being ignored when she needed help and making it difficult for her to do her job. She wanted to complain about Quiroz but she did not know where to direct her complaints. Ultimately, Twin Peaks retaliated against Subsits for refusing Quiroz's sexual advances by firing her.

103.    Twin Peaks also retaliated against Subsits when she objected to dress-ups, including but not limited to requiring she leave the restaurant to purchase buttocks-revealing panties or not work.

104.    Twin Peaks' constant negative comments about Subsits' body, tone grading, comparing her to other Girls' bodies, and other harassment, including denying her food breaks

(which were never denied to men), caused her to develop an eating disorder.

105. Plaintiff Autumn Sullivan worked as a Twin Peaks Girl, at the Twin Peaks located in Oakbrook Terrace, Illinois from, on or about, January 1, 2018 until, on or about, March 1, 2018. Ms. Sullivan is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

106. Twin Peaks customers constantly sexually harassed Sullivan, who was told by management that it was part of the job. Management contributed to the hostile work environment, constantly making comments about her body and her weight. Management also did things like sending her home because her costume was not revealing enough.

107. Twin Peaks retaliated against Sullivan for objecting to dress-ups, including but not limited to reducing her grade and demanding she leave the store and return with buttocks-revealing panties otherwise not work her shift.

108. As a result of the above practices, and in addition to other hostile conduct, which management refused to remedy, Sullivan was constructively discharged because she could no longer tolerate the hostile work environment.

109. Plaintiff Bailey Ward worked as a Twin Peaks Girl, at the Twin Peaks located in Oakbrook Terrace, Illinois from, on or about, January 1, 2016 until, on or about, June 1, 2016. Ms. Ward is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

110. Twin Peaks customers regularly sexually harassed Ward and management refused to do anything about it. For example, when a customer asked her to send him pictures of her, their solution was to send another Girl to the table with her. He then harassed both of them and management refused to intercede.

111. Management contributed to the hostile work environment, such as by commenting

on her body and weight. At one point, Twin Peaks told her she had thirty days to lost weight or she would be fired.

112.     Caitlyn Temesvary worked as a Twin Peaks Girl, at the Twin Peaks Oakbrook, Illinois during October 2016. Ms. Temesvary is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

113.     On Temesvary's first day of work, she arrived in the uniform that Twin Peaks provided to her. Management insisted she tie it up to reveal her torso and breasts starting the next day.

114.     On her second day of work, GM Thom Scott said to Temesvary: "I have to wear two pairs of boxers around here." He spoke similarly to other Girls. Temesvary repeatedly tried to call the store to express how uncomfortable she felt but no one answered. She finally sent an email and received a response, nine days later, falsely claiming she resigned.

115.     Twin Peaks managers were constantly commenting on women's bodies, their weight and what they ate. Twin Peaks fired her from the Oakbrook location for eating nachos, which she was eating because she was starving and they would not give her a food break. At Wheeling, every time she ate the manager called her fat.

**Twin Peaks Orland Park**

116.     Defendant Twin Restaurant Orland Park, LLC, is an is an Illinois Limited Liability Company authorized to do business in Illinois. Defendant Twin Restaurant Orland Park, LLC is an "employer" for purposes of Title VII with regard to the Twin Peaks restaurant located in Orland Park, Illinois.

117.     There was a hostile work environment at the Twin Peaks Orland Park during the entire time the plaintiffs worked there. The institutionalized degrading and demeaning of women, as described above, contributed to that. At the Orland Park location, Twin Peaks provided a changing

room for the girls referred to as the Glam Room. However, it had no door and so male employees could openly watch them change clothes. The kitchen staff would stand at the entrance and watch them dress and undress making lewd comments and sexual gestures.

118.    Twin Peaks permitted its kitchen staff at Orland Park to sexually harass the Girls openly and often. The men in the kitchen would cat-call the Girls, whistle at them, touch them, proposition them and comment on their clothes and bodies. Management knew about this, and sometimes witnessed it, but did nothing. When Girls complained, they were brushed off. A manager told Sarah Blaylock that if she didn't like it, she could leave.

119.    At Orland Park, like other locations, Twin Peaks forced women to work in lingerie, bikinis and similar skimpy outfits and forced them to pay for it as a condition of employment. Men had no such requirements. Management would penalize women financially for not wearing shirts or shorts that were revealing enough. Managers also made comments about women's weight and sometimes would limit what they could eat during their breaks, requiring they only order from the "spa menu." Other times Twin Peaks refused to let women eat at all, denying them breaks and thus removing any opportunity they could have for eating.

120.    Plaintiff Sarah Blaylock worked as a Twin Peaks Girl, at Twin Peaks located in Orland Park, Illinois between, April 1, 2016 until, on or about, July 1, 2017. Ms. Blaylock is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

121.    Twin Peaks customers regularly sexually harassed Blaylock, ranging from lewd comments to propositions for sex to unwanted touching. As just one example, one customer said to her: "Come rub your pussy on my food." Management knew about it, and sometimes witnessed it, but did nothing about it. When Blaylock complained she was brushed off. Just as when she complained about the harassment from kitchen staff, Twin Peaks told her if she didn't like it she

could leave. Management even required she take pictures with customers.

122.    Management contributed to the hostile work environment. Tony Gutierrez required she send him pictures of himself in lingerie. He made it knows that Girls who wanted better shifts or tone grades needed to sleep with him. Managers Alex Ramirez and Alex Zepeda pressured her to date them. Managers also commented on her, and other Girls', bodies and weight. Twin Peaks monitored what she ate or denied her breaks to eat outright.

123.    Management required Blaylock to wear lingerie or otherwise not work. At one point, police issued a warning about servers wearing lingerie. Twin Peaks told the Girls that there was nothing illegal and required her to continue wearing it. When Orland Park Police returned, this time they raided the restaurant, that was packed with men there for a UFC fight night, and ticketed her for indecent exposure, despite the fact that she was wearing shorts under the lingerie to cover her buttocks. Twin Peaks claimed they were handling the ticket but it turned out a Twin Peaks attorney quietly pled her liable and paid the fine rather than defend her.

124.    Twin Peaks retaliated against Blaylock for complaining about sexual harassment and objecting to dress-ups, including but not limited to sending her home to change into buttocks-revealing panties, reducing her tone grade, cutting her from her shifts early, and scheduling her for morning shifts. When she questioned Twin Peaks' retaliatory practices, they refused to give her an explanation

125.    Danielle Uphoff worked as a Twin Peaks Girl, at Twin Peaks located in Oakbrook Terrace, Illinois from, on or about January 1, 2017 until, on or about, April 1, 2017. Ms. Uphoff is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

126.    Twin Peaks customers regularly sexually harassed Uphoff. As just one example, management forced her to take a picture with one customer who proceeded to put his face in her

buttocks. When she complained management said it was part of the job.

127. Management contributed to the hostile work environment. For example, Tony Gutierrez took pictures of her on his cell phone and, when he learned she was engaged, began spreading rumors that she was sleeping with him. She was forced to wear lingerie exposing her buttocks.

128. When Uphoff objected to Gutierrez's sexual advances, he retaliated against her, including but not limited to removing her from the schedule. Twin Peaks did not provide Uphoff with an avenue to voice her complaints about management.

129. Plaintiff Samantha Fuller worked as a Twin Peaks Girl, at the Twin Peaks located in Orland Park, Illinois from, on or about, August 1, 2017 until, on or about October 2017. Then, again from, on or about January 1, 2018 until, on or about, March 1, 2018. Ms. Fuller is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

130. Twin Peaks customers regularly sexually harassed Fuller and when she complained, management laughed at her. Indeed, management contributed to the hostile work environment. For example, Tony Gutierrez touched her breast several times under the guise of trying to get her to tie her shirt in order to show more cleavage. He also would show her sexual memes and laugh.

131. Management called Fuller fat and constantly ridiculed her body. Twin Peaks denied her breaks so that she could not eat. When she was at the bottom of the list of Girls for tone grading, Twin Peaks punished her by requiring she work from 4:30 p.m. until 2 a.m. without a break.

132. Plaintiff Jessica Mercer worked as a Twin Peaks Girl, at the Twin Peaks located in Orland Park, Illinois from, on or about, May 18, 2016 until, on or about, February 17, 2017. Ms. Mercer is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

133.     Twin Peaks customers regularly sexually harassed Mercer, ranging from lewd comments to being sexually propositioned to unwanted touching. As just one example, a customer once said to her, "Do you like your asshole licked"? Another time, she reported that she was followed home by a regular. Management knew about, and sometimes witnessed, this harassment, but did nothing about it.

134.     Management contributed to the hostile work environment. Managers told Mercer that her costumes had to reveal more of her body. They required she wear revealing lingerie. She was told that if she wanted to improve her tone grade, which in turn would lead to working more lucrative sections of the restaurant, she had to sleep with manager Tony Gutierrez. Gutierrez commented on her, and other Girls' bodies and weight. He often called her fat to the point that she was crying.

135.     When Mercer complained to management about lingerie and bikini dress-ups, Twin Peaks retaliated against her, including but not limited to deducting points from her tone grade, demoting her to a less lucrative section, and/or sending her home early.

136.     Mercer eventually elevated her complaints to Brad Hagar – her only contact from corporate - about the hostile environment including but not limited Tony Gutierrez squeezing the inside of her thighs and her stomach without her consent. When she returned to work, Gutierrez yelled at her for "telling on" him. Gutierrez then retaliated against her in ways including but not limited to placing her in the least lucrative section in the back of the restaurant.

137.     Plaintiff Alexsandrea Miranda worked as a Twin Peaks Girl, at the Twin Peaks located in Orland Park, Illinois from, on or about, October 1, 2017 until, on or about, March 1, 2017. Ms. Miranda is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

138.     Twin Peaks customers regularly sexually harassed Miranda, both through comments

and unwanted touching. As just one example, a customer once grabbed her and pulled her into his body. When she reported it to management, she was told "that's fine."

139.    Management contributed to the hostile work environment. They commented on and critiqued Miranda's body and taunted her by saying things like: "go workout." Twin Peaks refused to let her work after she shaved her head unless she wore a wig. She was denied breaks for food. Bartending shifts were decided on who Tony Gutierrez ranked as better looking. It was known that Girls could get better shifts or tone grades by sleeping with him.

140.    Management retaliated against Miranda for complaining about customer sexual harassment in ways including but not limited to moving her from her assigned section of the bar to the slower, less lucrative section of the bar.

141.    Plaintiff Tashia Moore, who is African American, worked as a Twin Peaks Girl, at the Twin Peaks located in Orland Park, Illinois from, on or about, September 1, 2016 until, on or about, November 1, 2017. Ms. Moore is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

142.    Twin Peaks customers regularly sexually harassed Moore, both through their lewd comments and unwanted touching. She had to endure incessant sexual propositions and men shoving money into her bra without her consent. Management knew about customers' sexually harassing conduct but did nothing. When she complained, they refused to take any action.

143.    Management contributed to the hostile work environment. Tony Gutierrez commented on and touched Moore's body, and made remarks about her weight. He often took pictures of her and other Girls when he was grading their bodies. She understood that Girls were required to sleep with Tony to get preferential treatment at work.

144.    Twin Peaks retaliated against Moore for complaining about lingerie and bikini dress-ups, including but not limited to sending her home from her shift and not allowing her to work.

When Moore complained about customer sexual harassment, management retaliated against her, including but not limited to reducing her shifts, refusing to allow her to pick up available shifts, and taking her tables away.

145.   Twin Peaks also discriminated against Moore based on her race. She wanted to be a bartender, with the higher earning potential that brought, and manager Susan Winfield said she was qualified. GM Gutierrez chose a less qualified white woman instead.

146.   The only pictures she was shown about how she was supposed to look as a "Twin Peaks Girl" were of white women. There was no way for her to attain this standard.

147.   Plaintiff Daryll Rodriguez worked as a Twin Peaks Girl, at Twin Peaks located in Orland Park, Illinois from, on or about, June 6, 2016 until, on or about, June 1, 2017. Ms. Rodriguez is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

148.   Twin Peaks customers regularly sexually harassed Rodriguez. They said things like "I want your pussy on my plate" and "I want to lick your butthole" and "I'd rather eat you than this meal." She was constantly propositioned for sex." Management was well aware of this harassment but did nothing about it. When she complained she was told she signed up for it, or that if she did not like it she could leave.

149.   Management contributed to the hostile work environment. They constantly ridiculed Rodriguez's body by making harassing and demeaning comments, such as that she needs to work out more and has back fat. They required she dress in skimpy outfits, lingerie and bikinis and when she complained told her that she could quit and get another job.

150.   When Rodriguez complained about her low tone grade, Twin Peaks retaliated against her in ways including but not limited to scheduling her to work, only to then send her home an hour or two later. Manager Tony Gutierrez said, "You have to treat these women like the hoes that they

are."

151.    Plaintiff Kenneth Biggers worked as a busser and janitor at Twin Peaks, located in Orland Park, Illinois between, May 1, 2016 until July 1, 2017. Mr. Biggers is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

152.    Once Twin Peaks discovered Biggers was gay, it stopped training him to be a "trainer" and required that he only work as a busser and janitor. Management constantly harassed him for being gay, calling him princess, asking if he wanted to wear the Girls' uniform, and using the word fag in front of him. Biggers contacted Brad Hagar in upper management to complain after being called a "cock sucking faggot." Hagar did not respond.

**Twin Peaks Wheeling**

153.    Twin Restaurant Wheeling, LLC, is an is an Illinois Limited Liability Company authorized to do business in Illinois. Defendant Twin Restaurant Wheeling, LLC is an "employer" for purposes of Title VII with regard to the Twin Peaks restaurant located in Wheeling, Illinois.

154.    There was a hostile work environment at the Twin Peaks Wheeling during the entire time the plaintiffs worked there. The institutionalized degrading and demeaning of women, as described above, contributed to that. At the Wheeling location, harassment by the kitchen staff also contributed to this. The kitchen staff constantly harassed the Girls, such as by whistling, cat-calling and making sexual comments. Management knew about, and in many instances witnessed this harassment by kitchen staff but did nothing about it.

155.    At Wheeling, like other locations, Twin Peaks forced women to work in lingerie, bikinis and similar skimpy outfits and forced them to pay for it as a condition of employment. Men had no such requirements. Management would penalize women financially for not wearing shirts or shorts that were revealing enough. Managers also made comments about women's weight and

sometimes would limit what they could eat during their breaks, requiring they only order from the "spa menu." Other times Twin Peaks refused to let women eat at all, denying them breaks and thus removing any opportunity they could have for eating.

156.     Plaintiff Kamari Evans, who is African American, worked as a Twin Peaks Girl, at Twin Peaks located in Wheeling, Illinois from, January 11, 2017 until, on or about, December 1, 2018. Ms. Evans is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

157.     Twin Peaks customers regularly sexually harassed Evans and when she complained about it, management ignored her complaints or made comments like: "Just serve them." Management contributed to the hostile work environment, commenting on women's bodies and weight and requiring they dress in bikinis and other revealing clothing or otherwise not work.

158.     Twin Peaks also harassed Evans on the basis of race. During a meeting a corporate executive stated something to the effect of: look at her hair, this is an example of what is not to our standards. To conform to Twin Peaks standards, she was forced to pay for keratin treatments and wigs. Twin Peaks once sent her home because her hair was not straight enough. Management then made fun of her for her hair, calling her "Donna Summers."

159.     Twin Peaks also retaliated against Evans for objecting to the hostile environment. For example, when she objected to the dress ups, such as Twin Peaks' insistence that she exposing her buttocks more, she was sent home, thus losing income for that scheduled shift.

160.     Plaintiff Stephanie Faynshteyn worked as a Twin Peaks Girl, at the Twin Peaks located in Wheeling, Illinois from July 20, 2017 until, on or about, July 1, 2019. Ms. Faynshteyn is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

161.     Twin Peaks customers regularly sexually harassed Faynshteyn, from lewd statements,

to sexual propositions to unwanted touching. As just on example, a customer slapped her on the buttocks. Management knew about, and sometimes witnessed this conduct, but did nothing about it. When she complained they refused to intervene, and said things to her like that she should just ignore it or it was not that severe.

162. Management contributed to the hostile work environment, commenting on women's bodies, their weight and their eating habits. In approximately April 2019, Twin Peaks posted the number of a hotline for complaints. When Faynshteyn tried to call to complain, she could not get through to anyone with the number.

163. Twin Peaks retaliated against Faynshteyn for objecting to revealing her body during dress-ups including but not limited to not allowing her to work her scheduled shift.

164. Plaintiff Lizeth Hurtado worked as a Twin Peaks Girl, at Twin Peaks located in Wheeling, Illinois from, on or about, April 1, 2016 until, on or about, April 1, 2017. Ms. Hurtado is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

165. Twin Peaks customers regularly sexually harassed Hurtado and management did nothing to stop it despite her repeated complaints. Management contributed to the hostile work environment, commenting on women's bodies and weight. Management told Hurtado she could not be in team pictures anymore because she was too fat and was taken off the schedule for 30 days and put on "fat probation," which caused her to develop an eating disorder.

166. Twin Peaks retaliated against Hurtado for objecting to dress-ups, including but not limited to telling her that she could not come into work or giving her shifts away. For example, one time she objected to being required to purchase lingerie for a "Naughty Santa" lingerie dress up, and her shift was given away to someone else.

167. Plaintiff Karena Villegas worked as a Twin Peaks Girl, at Twin Peaks located in

Wheeling, Illinois from January 8, 2018 until, on or about, July 1, 2019. Ms. Villegas is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

168.    Twin Peaks customers regularly sexually harassed Villegas from comments to sexual propositions to unwanted touching. Management knew about, but refused to do anything about it. For example, when she reported a customer grabbing her to a manager named Kenny, he responded, "you should have punched him in the face" and refused to take any action.

169.    Management contributed to the hostile work environment. A manager named Dave always made comments about how he couldn't help but stare and Villegas, and other Girls' breasts. Managers also commented on women's bodies, their weight and their eating habits. Twin Peaks required that she travel to other locations, without pay, to watch presentations on how the food you eat can turn into fat and how to grade other women's bodies.

170.    Villegas tried to complain by calling a 1-800 number posted in the bathroom. When she tried to call, it was automated and she could not get through.

171.    When Villegas complained about dress-ups, Twin Peaks retaliated against her, including but not limited to sending her home to change or completely taking away a pre-scheduled shift.

172.    Plaintiff Susan Winfield, who is African American, worked as a manager at Twin Peaks corporate-owned restaurants, located in Illinois, from, on or about September 1, 2015 until, on or about April 1, 2018. Ms. Winfield is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

173.    Winfield worked as a manager at Twin Peaks moving between various corporate locations. She trained in Texas, then worked at Oakbrook, then at Orland Park, then at Wheeling and finally at Warrenville, where she was fired.

174. As a manager, Winfield always reported to the General Manager of the location she worked, which was always a man. These GMs would stop her from kicking out customers who sexually harassed the Girls. At Orland Park, Tony Gutierrez was the GM and he would openly give the best tone grades to the women who slept with him.

175. She had access to no a human resources department, and neither did the Girls. There were no basic human resources policies or procedures. She did not even have access to anyone in the corporate office. Only GMs had that access to corporate.

176. Winfield never got a raise or an evaluation. Men and non-black managers got bonuses larger than what Twin Peaks paid her.

177. When Tony Gutierrez was transferred from Warrenville to Orland Park to work as GM there – a store she opened – Regional Manager Brad Hagar explained his refusal to promote her to GM this way: "I would have loved to promote you to GM but that's not a good look for Twin Peaks right now."

178. Male managers rarely got disciplined for sexual harassment, which was rampant, but Twin Peaks would fire African American male managers for harassment.

179. Winfield had been instructed, as a manager, to grade women and their bodies on the basis of one image of a blonde "girl next door." She refused to participate in this and so instead just gave them all the same scores so she could complete the paperwork. This caused tension with her boss, Gutierrez, who then refused to permit her to do it.

180. In 2018, Twin Peaks transferred Winfield to the Warrenville store. She posted on her Snapchat that she intended to be treating everyone equally. The GM of the Warrenville store then contacted her to tell her she was suspended and, two to three days later, when she arrived in Warrenville to begin work, Twin Peaks fired her.

181.     Plaintiff Crystal McBride worked as a Twin Peaks Girl, at Twin Peaks located in Plano, Texas from, on or about, October 1, 2017, until April 30, 2018. Ms. McBride is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

182.     The kitchen staff at the Plano location sexually harassed her. In addition a busboy named Chris harassed her and she complained about it several times, to no avail.

183.     Twin Peaks customers constantly sexually harassed McBride, including through unwanted touching. As just one example, a group of customers once told her to bend over, show more tits and ass and threw a beer at her.

184.     McBride complained to management frequently about the harassment and they brushed it off in various ways: just ignore them, buy them a shot, use this as an opportunity to make more money. The time the customers threw a beer at her, manager John St. Germain wrote her up for being rude to customers.

185.     Management contributed to the hostile work environment. They would comment and judge women and their bodies and force them to wear lingerie and similarly skimpy outfits and forced them to pay for it as a condition of employment. Men had no such requirements.

186.     Twin Peaks retaliated against McBride for objecting to the dress-ups. For example, when she complained about being required to wear a bikini on a cold winter day, they assigned her to work on the patio.

187.     Twin Peaks also retaliated against McBride for complaining about sexual harassment, including but not limited to moving her to another section because she could not "handle" a table of sexually harassing men, giving her tables to other Girls, and writing her up for "disrespecting" a customer. One time, after she reported a regular who pulled a gun on her, outside of the workplace,

management told her she cannot "prove" it, and demoted her to a less-lucrative section every time he visited the restaurant.

188.    In addition, McBride was discriminated against and refused an accommodation on the basis of her disability, Nail-Patella Syndrome, which impacts her muscle tone, nails and other physical attributes. Despite notifying Twin Peaks of her condition, the company refused to make a reasonable accommodation and instead kept lowering her tone grade scores. These lower tone grade scores impacted her financially, because it determined what advantages she would have in earning potential, such as what section of the restaurant she would work. Twin Peaks retaliated against McBride based on her complaints about the company not accommodating her disability, including but not limited to her termination.

189.    After McBride filed a charge of discrimination against the company for sexual harassment, she was terminated in retaliation for filing that charge as well as for her requests for a reasonable accommodation. She left her shift due to a medical condition and not having her medication. The company fired her on the pretense supposedly abandoning her shift.

190.    Plaintiff Russell Williamson worked as a manager-in-training, at Twin Peaks corporate-owned restaurants, located in Texas, from, on or about February 5, 2018 until April 2018. Mr. Williamson is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

191.    Williamson previously worked as a GM at Hooters and then a manager at Del Frisco's. Thus, he was experienced in the hospitality industry when he joined Twin Peaks as a manager-in-training.

192.    Williamson was surprised at what he saw. The female servers were forced to wear lingerie and if they complained were told that if they did not like it they could leave. He witnessed a woman sent home, and removed from the schedule for a week, in punishment for showing up for

work in the standard issue uniform instead of a skimpy dress-up costume.

193.　Williamson also witnessed the kitchen staff sexually harassing the women, and walking in on them while they were changing clothes in the doorless dressing room. Twin Peaks placed a camera in the dressing room and General Manager Brian Freeborn watched women undress from a monitor in his office.

194.　The women complained constantly of customer sexual harassment. When he once went to throw out a customer, a manager stopped him. At Hooters there were multiple avenues for women to complain. At Twin Peaks there were none.

195.　The second to the last day of training, he was asked by various senior executives how his training was coming along. He openly told them what he had witnessed. They said they were aware and were monitoring it.

196.　On his last day of training, he called to say he was going to be 10-15 minutes late due to a car accident. His GM was fine with it and he arrived and began his shift. Later that day one of the executives who had met with him the day before learned that he was late and fired him on the spot, supposedly because he was late but in fact in retaliation for his engaging in protected activity.

197.　Plaintiff Sonia Santellanes worked as a Twin Peaks Girl, at the Twin Peaks located in Frisco, Texas from approximately April 2019 through May 2019. Ms. Santellanes is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

198.　The kitchen staff in the Frisco restaurant constantly harassed Santellanes and the other Girls, including catcalling. Management knew about it but refused to do anything about it. The Girls were given a doorless dressing room to change their clothes where kitchen staff could watch them.

199.　Twin Peaks customers regularly sexually harassed Santellanes, including by unwanted

touching – on her lower back, buttocks, constant touching. Management saw this occurring but did nothing to stop it, even when she complained.

200.    Management contributed to the hostile work environment. They would comment and judge women and their bodies and force them to wear lingerie and similarly skimpy outfits and forced them to pay for it as a condition of employment. Men had no such requirements.

201.    When Santellanes told management she refused to wear lingerie, they immediately retaliated, including but not limited to forcing her to stay two hours late, without any tables, and removing her from the schedule.

202.    Plaintiff Bobbie Peck worked as a Twin Peaks Girl, at Twin Peaks located in Round Rock, Texas from April 11, 2016 until, on or about, October 1, 2018. Ms. Peck is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

203.    The kitchen staff in the Round Rock restaurant constantly harassed Peck and the other Girls. Management knew about it but refused to do anything about it. The Girls were given a doorless dressing room to change their clothes where kitchen staff could watch them.

204.    Twin Peaks customers regularly sexually harassed Peck and management knew about it but refused to intervene. Management, in fact, appeared to be using Twin Peaks to engage in sex trafficking. A manager named Joe once said to her: if you need more money, I have a friend.

205.    Management contributed to the hostile work environment. They would comment and judge women on their bodies, and weight, and force them to wear lingerie and similarly skimpy outfits and forced them to pay for it as a condition of employment. Men had no such requirements.

206.    Twin Peaks retaliated against Peck for objecting to the dress-ups. For example, when she arrived for her shift in boy-shorts, management forced her to leave and go buy bikini bottoms that exposed her buttocks.

207.    Plaintiff Alexandra Pearce worked as a Twin Peaks Girl, at the Twin Peaks located in Orlando, Florida from, on or about, May 1, 2013 until, on or about, November 1, 2017. Ms. Pearce is an employee for purposes of Title VII and has exhausted her administrative remedies and/or such exhaustion would be futile.

208.    The cooks sexually harassed Pearce every day, hitting on her and saying things like, "let me put my finger in and taste it." Management knew about this but did nothing to stop it.

209.    Twin Peaks customers regularly sexually harassed Pearce, including making lewd comments and sexually propositioning her. She had to endure comments like: I don't see you on the menu, I want to cover you in honey, are you my big toe because I want to bang you on my coffee table. Management knew about this harassment but did nothing about it, and complaining did not help. They refused to address it.

210.    Upon Pearce's hiring, management told her that dress-ups were voluntary; however, when she objected to wearing lingerie or a bikini, Twin Peaks retaliated against her, including but not limited to docking points from her grade, which resulted in a lesser lucrative section.

211.    Twin Peaks attempted to get her to sign a paper stating she did not think she was working in a hostile environment. When she refused, management told her she could not work unless she signed the paper. When a "secret shopper" said that she and another bartender did not give him enough attention, Twin Peaks demoted her from bartender to server but did not punish the other bartender because she was in a sexual relationship with one of the managers.
Pearce was ultimately constructively discharged because she could not tolerate the hostile work environment any longer

212.    Management contributed to the hostile work environment. They commented on Pearce's and other women's bodies and their weight. Due to the constant body shaming, Pearce to this day works out non-stop and is self-critical of how she looks.

213.     All the plaintiffs in this lawsuit have been harmed by Twin Peaks conduct.

**Pattern or Practice Allegations**

214.     Twin Peaks has engaged in a pattern or practice of assigning women work assignments based on their physical appearance. It does not do this to men.

215.     Twin Peaks has engaged in a pattern or practice of requiring female employees to purchase sexually suggestive outfits for "dress-ups" and if they do not comply, they are denied shifts, given less lucrative work assignments, sent home or otherwise penalized. Twin Peaks does not have any such requirements for its male employees.

216.     Twin Peaks has engaged in a pattern or practice of failing to implement an anti-discrimination and anti-harassment policy.

217.     Twin Peaks has engaged in a pattern or practice of institutionalized sexual harassment and abuse of women based on their gender, including doorless changing rooms, encouraging customers to harass women and permitting kitchen staff to harass them.

218.     Indeed, Twin Peaks has in some instances gone so far as to pimp out its female workers for sex, engaged in sex trafficking, plied its female workers with drugs and required them have sex with their male managers in order to improve the terms and conditions of their employment.

**Jurisdiction and Venue**

219.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

220.     Venue in this district is proper under 42 U.S.C. § 2000e–5(f)(3) because the majority of the unlawful employment practices occurred in this district and the majority of the plaintiffs in this case worked in this judicial district.

221. Defendant Twin Peaks Restaurant Warrenville, LLC is an Illinois Limited Liability Company authorized to do business in Illinois. Defendant Twin Restaurant Warrenville, LLC is an "employer" for purposes of Title VII with regard to the Twin Peaks restaurant located in Warrenville, Illinois.

222. Defendant Twin Restaurant, LLC was Russell Williamson's employer and thus is an "employer" for purposes of Title VII. It is also believed to be a joint employer for other plaintiffs.

223. Defendant Twin Restaurant Frisco, LLC was Sonia Santellanes' employer and thus is an "employer" for purposes of Title VII.

224. Defendant TP Franchise Ventures I, LLP was Bobbie Peck's employer and thus is an "employer" for purposes of Title VII.

225. Defendant Doe Corporation was Crystal McBride's employer.

226. Defendant Twin Restaurant Holding, LLC and Twin Restaurants Holding, LP, Twin Restaurant Franchise, LLC, Front Burner Restaurants, Twin Restaurant Investment Co. II, LLC, Consolidated Restaurant Operations, Inc. and Twin Restaurant Investment Company, are, upon information and belief, joint employers and/or the parent companies that dictated and controlled the terms and conditions of employment.

## COUNT I
### Violations of Title VII and the Pregnancy Discrimination Act
### Discrimination on the basis of Gender, Race, Pregnancy and Sexual Orientation and Sexual Harassment/Hostile Work Environment

227. Plaintiffs incorporate by reference the paragraphs above.

228. As described above, the employer-defendants discriminated against all plaintiffs other than Williamson and Biggers plaintiffs based on their sex in the terms and conditions of employment by subjecting them to conditions that men did not have to endure.

229. In addition, the employer-defendants subjected all plaintiffs other than Winfield and

41

Williamson to sexual harassment and/or a hostile work environment, which was severe or pervasive and both objectively and subjectively offensive.

230.   As described above, the defendant(s)-employer(s) of Kenneth Biggers discriminated against him due to his gender and sexual orientation.

231.   As described above, the defendant(s)-employer(s) of Susan Winfield, Tashia Moore, Johnae Farr and Kamari Evans discriminated against them and/or harassed them due to their race, African American.

232.   As described above, the defendant-employer of Hayley Frank discriminated against her based on her pregnancy.

233.   The defendant-employers acted with malice or with reckless indifference to plaintiffs' rights.

### COUNT II
### Violation of Title VII – Retaliation

234.   Plaintiffs incorporate by reference the paragraphs above.

235.   As described above, the defendant-employers retaliated against plaintiffs because they engaged in protected speech.

236.   These defendant-employers acted with malice or with reckless indifference to plaintiffs' rights.

### COUNT III
### Violation of 42 U.S.C. § 1981

237.   Plaintiffs incorporate by reference the paragraphs above.

238.   As described above, the defendant-employers of Susan Winfield, Tashia Moore, Johnae Farr and Kamari Evans discriminated against and/or harassed based on their race, African American.

239.   These defendant-employers acted with malice or with reckless indifference to

plaintiffs' rights.

## COUNT IV
## Violation of the Americans with Disabilities Act
### (Discrimination/Failure to Accommodate/Retaliation/Hostile Work Environment)

240.    Plaintiffs incorporate by reference the paragraphs above.

241.    As described above, the defendant-employers of Clements, Litavsky and McBride

violated the Americans with Disability Act.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury.

WHEREFORE, plaintiffs respectfully request the following relief:

a.    an order finding and declaring that defendants violated Title VII, Section 1981 and the Americans with Disabilities Act;

b.    appropriate damages to compensate plaintiffs for any and all lost wages and other benefits and/or any other appropriate relief for which they are entitled by virtue of defendant's law violations;

c.    defendants be ordered to compensate plaintiffs for any backpay, front pay and/or lost future earnings to compensate them for her losses;

d.    defendants be ordered to compensate plaintiffs for emotional distress, physical injuries and other compensatory damages in an appropriate amount as allowed by law;

e.    plaintiffs be awarded punitive damages in an appropriate amount as allowed by law;

f.    plaintiffs be awarded pre-judgment interest;

g.    plaintiffs be awarded an amount to compensate them for the tax consequences of a lump sum award of damages;

h.    plaintiffs otherwise be awarded make-whole damages;

i.    plaintiff be awarded their costs and reasonable attorney's fees, including expert witness fees; and

j.    such other relief as is just and proper.

Respectfully submitted,

RACHEL ANDERSON, *et al.*

/s/ Tamara N. Holder
By One of their Attorneys

Tamara N. Holder
The Law Firm of Tamara N. Holder LLC
917 W. Washington St., Ste. 222
Chicago, IL 60607
(312) 818-3850
Fax: (312) 469-8302
tamara@tamaraholder.com

Johanna J. Raimond
Law Offices of Johanna J. Raimond Ltd.
431 S. Dearborn, Ste. 1002
Chicago, Illinois 60605
Telephone: (312) 235-6959
Fax: (312) 469-8302
jraimond@raimondlaw.com