**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RACHEL ANDERSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.  20-cv-04648 |
| | ) | |
| v. | ) | Judge Jorge L. Alonso |
| | ) | |
| TWIN RESTAURANT OAKBROOK, LLC, et al., | ) | Magistrate Judge Sunil R. Harjani |
| | ) | |
| Defendants. | ) | |

<u>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE TWIN PEAKS
DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES……………………………………………………………… iii

PRELIMINARY STATEMENT…………………………………………………………1

ARGUMENT…………………………………………………………………………...2

POINT I: SANTELLANES IS SUBJECT TO A BINDING ARBITRATION
AGREEMENT……………………………………………………………………………2

POINT II: PLAINTIFFS' CLAIMS SHOULD BE DISMISSED AS UNTIMELY
AND FOR FAILURE TO EXHAUST THEIR ADMINISTRATION REMEDIES…..…4

    A.  The Title VII, PDA, And ADA Claims Must Be Dismissed As Untimely…...4

    B.  The Title VII, PDA, And ADA Claims Must Be Dismissed Because
        The EEOC Charges Did Not Give Notice Of Their Claims……………..…..4

    C.  Certain Plaintiffs' Title VII And IHRA Claims Must Be Dismissed For Failure
        To Exhaust Their Administrative Remedies…………………………………..6

        1.  Certain Plaintiffs Failed To Exhaust Their Title VII Claims…………..6

        2.  Plaintiffs' IHRA Claims Are Time-Barred……………………………8

POINT III: THE SAC MUST BE DISMISSED FOR FAILURE
TO STATE A CLAIM………………………………………………….…………………9

    A.  Certain Plaintiffs Fail To State A Claim For Discrimination Or
        Harassment On The Basis Of Sex…………………………………………..9

    B.  Plaintiffs Evans, Frank, Mascorro, Miranda, Sullivan, And Ward Have
        Not Stated Claims of Hostile Work Environment On The Basis Of Sex……...10

    C.  Certain Plaintiffs' Race Claims Must Be Dismissed………………………...11

    D.  Frank Fails To State A Claim For Pregnancy Discrimination………………12

    E.  Certain Plaintiffs' Retaliation Claims Must Be Dismissed………………….13

    F.  Certain Plaintiffs' Disability Claims Must Be Dismissed…………………...15

CONCLUSION………………………………………………………………………15

## **TABLE OF AUTHORITIES**

**Cases:**                                                                                                          **Page(s)**

Banuelos v. Alorica, Inc.,
No. 20-CV-65 (DB), 2020 U.S. Dist. LEXIS 127392 (W.D. Tex. July 20, 2020)………………..3

Cigna v. Ill. Hum. Rights Comm's,
154 N.E.3d 805 (Ill. 2020)………………………………………………………………………...8

EEOC v. Concentra Health Sys.
496 F.3d 778 (7th Cir. 2007)……………………………………………….............5, 14

EEOC v. Caterpillar, Inc.,
409 F.3d 831 (7th Cir. 2005)…………………………………………………………………...5

Fort Bend Cty. v. Davis,
139 S. Ct. 1843 (2019) …………………………………………………….......................7

Goldberg v. Chi. Sch. For Piano Tech., NFP,
Case No. 14 C 1440, 2015 U.S. Dist. LEXIS 12333 (N.D. Ill. Feb. 3, 2015)……………………9

Griffin v. Sutton Ford, Inc.,
452 F. Supp. 2d 842 (N.D. Ill. 2006)…………………………………………………………...7

Hamilton v. Commonwealth Edison Co.,
No. 11-cv-1752, 2011 U.S. Dist. LEXIS 71733 (N.D. Ill. July 5, 2011)…………………………4

Herrnreiter v. Chicago Hous. Auth.,
315 F.3d 742 (7th Cir. 2002)……………………………………………………………...10

Huckaba v. Ref-Chem, L.P.,
892 F.3d 686 (5th Cir. 2018)…………………………………………………………….....3

Inman v. Lemont Pub. Library Dist.,
No. 19 C 5282, 2020 WL 5209827 (N.D. Ill. Sept. 1, 2020)……………………………………10

Johnson v. Advocate Health & Hosps. Corp.,
892 F.3d 887 (7th Cir. 2018)………………………………………………………………10

Langer v. Bd. of Ed.,
2013 WL 5646673 (October 16, 2013)………………………………………………...5

Laurie v. William M. Bedell Achievement Res. Ctr.,
2017 U.S. Dist. LEXIS 41536 (S.D. Ill. Mar. 22, 2017)…………………………………………8

Miller v. Am. Airlines, Inc.,
525 F.3d 520 (7th Cir. 2008)……………………………………………………………………..5

Ownley v. Brunel Energy, Inc.,
No. 20-CV-03115, 2020 U.S. Dist. LEXIS 234141 (S.D. Tex. Dec. 14, 2020)………………...2-3

Riley-Jackson v. Casino Queen, Inc.,
No. 07-CV-0631-MJR, 2011 U.S. Dist. LEXIS 18761 (S.D. Ill. Feb. 25, 2011)…………………7

Rosa v. Bd. of Trs. of the Univ. of Ill.,
2020 U.S. Dist. LEXIS 233266 (N.D. Ill. Dec. 11, 2020)………………………………………13

Schmeirbach v. Alton & S. Ry. Co.,
No. 18-01684-NJR-GCS, 2019 U.S. Dist. LEXIS 107894 (S.D. Ill. June 27, 2019)……………..9

Schnellbaecher v. Baskin Clothing Co.,
887 F.2d 124 (7th Cir. 1989)……………………………………………………………………...5

Tamayo v. Blagojevich,
526 F.3d 1074 (7th Cir. 2008)………………………………………………......................13

Unger v. Celevoke Inc.,
No. 09-CV-365 (LED)(JDL), 2010 U.S. Dist. LEXIS 160996 (E.D. Tex. Oct. 14, 2010)……….3

Worldventures Mktg., LLC v. Rogers,
No. 18-CV-498, 2018 U.S. Dist. LEXIS 220924 (E.D. Tex. Dec. 10, 2018)……………………..2

Twin Peaks[1] submits this Reply in further support of its Motion to Dismiss (the "Motion" or "Mot.") and in response to Plaintiffs' Memorandum in Opposition (the "Opposition" or "Opp.").

## PRELIMINARY STATEMENT

As set forth in the Motion, the SAC[2] should be dismissed because it is untimely, because certain Plaintiffs failed to exhaust their administrative remedies, and because it is replete with conclusory allegations of wrongdoing that have been rejected by this Court as insufficient to state a claim. Nothing argued by Plaintiffs in the Opposition warrants a different conclusion.

Plaintiffs' primary argument with respect to their failure to timely file this action or, for certain Plaintiffs, to exhaust their administrative remedies is that these are affirmative defenses and only after the parties engage in costly discovery with respect to the individual claims of thirty-two people who worked at five different restaurants in three states, should the Court consider the threshold question of whether the claims are time-barred and/or procedurally barred for failure to exhaust. In so arguing, Plaintiffs not only ignore the practical reality of the colossal waste of judicial resources that such a process would entail, but also misstate the relevance of the Court's holding that failure to exhaust is not a jurisdictional defect. At bottom, Plaintiffs seek to be rewarded for artful pleading to evade dismissal of claims they know to be untimely or barred for failure to exhaust, conduct that Defendants have already pointed out is sanctionable.

Aside from the Plaintiffs' untimeliness and failure to satisfy the prerequisites for suit, the SAC also must be dismissed as it outright fails to set forth the minimum facts necessary to state

---

[1] "Twin Peaks" or the "Twin Peaks Defendants" are Twin Restaurant Oakbrook, LLC, Twin Restaurant Orland Park, LLC, Twin Restaurant Wheeling, LLC, Twin Restaurant Warrenville, LLC, Twin Restaurant Holding, LLC, Twin Restaurant, LLC, Twin Restaurant Franchise, LLC, Twin Restaurant Investment Co. II, LLC, Twin Restaurant Investment Company, Twin Restaurant Frisco, LLC, TP Franchise Ventures I, LLC, and Twin Restaurant IP LLC.

[2] Unless otherwise defined, capitalized terms used herein have the same definition as set forth in the Motion and accompanying Memorandum of Law.

claims of sex, race, disability and pregnancy discrimination, retaliation, and/or harassment. Despite Twin Peaks' Motion to Dismiss the First Amended Complaint on these same grounds, Plaintiffs never cured those defects in the SAC. As a result, dismissal with prejudice is warranted.

**ARGUMENT**

**I.**     **SANTELLANES IS SUBJECT TO A BINDING ARBITRATION AGREEMENT**

Santellanes' claims must be dismissed because she signed a binding agreement (the "Agreement") that requires arbitration of employment disputes in Texas, where she worked and still lives. Mot. at 12-13. Santellanes' argument that the Agreement is unenforceable because it was not signed (see Opp. at 27-30) is without merit because questions of enforceability are reserved for the arbitrator and, in any event, the arbitration agreement is enforceable.

First, Santellanes' argument fails because the Agreement contains a delegation clause (see Declaration of Clay Mingus ("Mingus Decl.") (Doc. 42-2), at Ex. A, ¶8)[3] and any issues as to enforceability must be resolved by the arbitrator under Texas law which, as Santellanes concedes, governs. See Ownley v. Brunel Energy, Inc., No. 20-CV-03115, 2020 U.S. Dist. LEXIS 234141, *3-4 (S.D. Tex. Dec. 14, 2020) (holding that "where a party resisting arbitration attacks … validity or enforceability, . . . such an argument must be heard by an arbitrator," where there is "a valid delegation clause"); Worldventures Mktg., LLC v. Rogers, No. 18-CV-498, 2018 U.S. Dist. LEXIS 220924, *19-20 (E.D. Tex. Dec. 10, 2018). Here, the Agreement contains a valid delegation clause that clearly and unmistakably evinces "the parties' intent to delegate to an arbitrator threshold questions of arbitrability and the validity of the arbitration agreement," and so

---

[3] Specifically, the Agreement provides that "the arbitrator – and not any court shall have the exclusive authority to resolve any dispute arising out of or relating to the formation, interpretation, applicability, validity, and/or enforceability of th[e] Agreement or any part of th[e] Agreement, including, but not limited to whether (a) the dispute is subject to arbitration, (b) all or any part of this Agreement is unenforceable, illegal, void, or voidable, or (c) the right to arbitration has been waived by a party through conduct or otherwise."

Pl Santellanes' argument that the Agreement is unenforceable must be made to the arbitrator. See Ownley, 2020 U.S. Dist. LEXIS 234141, at *4-5.[4]

Second, Santellanes is incorrect to assert that the Agreement is unenforceable because it was not signed by the appropriate corporate entity. Indeed, "Texas state law does not require an employer to sign an arbitration agreement for it to be valid and enforceable." Unger v. Celevoke Inc., No. 09-CV-365 (LED)(JDL), 2010 U.S. Dist. LEXIS 160996, *7-9 (E.D. Tex. Oct. 14, 2010); see Banuelos v. Alorica, Inc., No. 20-CV-65 (DB), 2020 U.S. Dist. LEXIS 127392, *14 (W.D. Tex. July 20, 2020) ("Under Texas law, an agreement to arbitrate is enforceable if the employee received notice of the arbitration policy and accepted it."). Santellanes' reliance on Huckaba v. Ref-Chem, L.P., 892 F.3d 686 (5th Cir. 2018) is misplaced. Notably, the Fifth Circuit recognized in that case that "[s]ignatures are not required as long as the parties give their consent to the terms of the contract, and there is no evidence of an intent to require both signatures as a condition precedent to it becoming effective as a contract" and, further, that "a signature block by itself is insufficient to establish the parties' intent to require signatures." Huckaba, 892 F.3d 686 at 688. Here, the language in the Agreement does not establish the parties' intent to require signatures.[5]

---

[4] Moreover, "express incorporation of the AAA Rules [in an arbitration agreement] constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." East El Paso Physicians' Med. Ctr., LLC v. Aetna Health Inc., 2017 U.S. Dist. LEXIS 30022, *10 (W.D. Tex. March 2, 2017); see Cooper v. WestEnd Cap. Mgmt., L.L.C., 832 F.3d 534, 546 (5th Cir. 2016); Ownley, 2020 U.S. Dist. LEXIS 234141, *5. Here, paragraph 1 of the Agreement expressly incorporates the AAA's Employment rules. See Mingus Decl., at Ex. A, ¶ 1.

[5] See Robertson v. Fiesta Rest. Grp., Inc., No. 17-CV-00384,2018 U.S. Dist. LEXIS 106582, *18, n.3 (S.D. Tex. June 8, 2018) ("[Plaintiff also claims that his signature was required because the Arbitration Agreement states: 'By signing below, you acknowledge that you are agreeing to have Claims, as described above, finally decided in private arbitration and not in court.' For the same reasons a blank signature line is not necessarily a condition precedent to the enforceability of a contract, the Court does not find that this sentence requires a signature to make the Arbitration Agreement enforceable"). The Federal Arbitration Act similarly does not require a signature for an arbitration agreement to be valid. See Aldridge v. Checkr, Inc., No. 19-CA-1013 (FB), 2019 U.S. Dist. LEXIS 228592, *15-16 (W.D. Tex. Nov. 27, 2019); see also Trujillo v. Volt Mgmt. Corp., No. 19-CV-00337 (DCG), 2020 U.S. Dist. LEXIS 67676, *9-10 (W.D. Tex. April 17, 2020); Unger, 2010 U.S. Dist. LEXIS 160996, at *7-9.

In any event, the Agreement is signed by Santellanes and Twin Peaks Frisco, *a defendant in this lawsuit*, and Santellanes' claims should be dismissed.

## II.     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED AS UNTIMELY AND FOR FAILURE TO EXHAUST THEIR ADMINISTRATIVE REMEDIES

### A.     The Title VII, PDA, And ADA Claims Must Be Dismissed As Untimely

Plaintiffs' Title VII, PDA, and ADA claims must be dismissed because Plaintiffs failed to bring their claims within 90 days of receiving the Notices. Mot. at 3-6. Notably absent from the Opposition is any argument that this is not the case; Plaintiffs do not deny that their counsel received the Notices on or before December 25, 2019 which would render their claims untimely. See Opp. at 17-19. Instead, Plaintiffs rely on the entirely unremarkable and undisputed statement of law that the date of receipt of the right to sue notices triggers the time to file suit, not the date it was sent. See id., at 18. Plaintiffs even concede the applicability of Hamilton v. Commonwealth Edison Co., No. 11-cv-1752, 2011 U.S. Dist. LEXIS 71733, at *6 (N.D. Ill. July 5, 2011) in which the court held that delivery of notice to an attorney's office triggers the 90-day filing deadline. See Opp. at 18, n.14. Plaintiffs' only actual argument in opposition, then, is that the Court should not consider this argument and instead force the parties to complete costly discovery with respect to thirty-one individuals. See id., at 19. The Court should not entertain Plaintiffs' efforts to obfuscate the chronology of events, which will result in the waste of resources on claims that they know to be untimely and, therefore, barred.

### B.     The Title VII, PDA, And ADA Claims Must Be Dismissed Because The EEOC Charges Did Not Give Notice Of Their Claims

Plaintiffs' claims must be dismissed to the extent they exceed the scope of their Charges. Plaintiffs' only argument in opposition is that Twin Peaks' argument is an affirmative defense not proper for dismissal at the pleading stage. Plaintiffs' argument is inherently flawed because courts within the Seventh Circuit have dismissed complaints when they raise claims outside the scope of

4

an EEOC charge and held that the scope of the charge is necessarily relevant to what a plaintiff can assert in a complaint. See Miller v. Am. Airlines, Inc., 525 F.3d 520, 525 (7th Cir. 2008).

Relying on EEOC v. Concentra Health Sys., Plaintiffs argue that the Charges were neither part of the SAC nor central to their claims and, therefore, should not be considered. Opp., at 32. However, Concentra is distinguishable from this case because the plaintiff there was the EEOC and, as the court recognized, the EEOC is not bound by facts alleged in the charge because the EEOC can conduct its own investigation and file a complaint based on theories or facts not raised by the employee in a charge. Concentra, 496 F.3d at 778 (holding that "the charge triggers the investigation, but 'if the investigation turns up additional violations, the [EEOC] can add them to its suit'; there is no need for the EEOC's complaint to be 'closely related to the charge'") (quoting EEOC v. Caterpillar, Inc., 409 F.3d 831, 833 (7th Cir.2005)).

The same is not true for Plaintiffs here who, unlike the EEOC, are required to plead that they satisfied their prerequisites to filing suit, including exhaustion of administrative remedies, with respect to all of their claims. Since Plaintiffs are bound by the scope of their Charges, they cannot add new claims or parties to their lawsuit, and the dates, parties, and scope of the claims asserted in the Charges are central to the issue of whether Plaintiffs have met their pre-suit obligations. See Langer v. Bd. of Ed., 2013 WL 5646673, *6 (October 16, 2013) ("The scope of the judicial proceeding subsequent to an EEOC charge 'is limited by the nature of the charges filed with the EEOC.'"). The Charges did not set forth any details about the allegations Plaintiffs assert in the SAC and so, Plaintiffs did not provide sufficient notice of their claims.[6]

---

[6] Further, Plaintiffs failed to name all of the Twin Peaks Defendants in their Charges, who they now name in their SAC. Only Twin Restaurant Oakbrook, LLC, Twin Restaurant Orland Park, LLC, and Twin Restaurant Wheeling, LLC were named in some of the EEOC charges. See Doc.# 42-1, pp. 54-113. There is no question that the other defendants were provided no notice of the claims now asserted against them. Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 127 (7th Cir. 1989).

Whether or not they attached the Charges to the SAC is of no consequence, and Plaintiffs should not be rewarded and the SAC should be allowed to proceed because they conspicuously chose not to attach or include allegations about the scope of the Charges. Each Plaintiff alleged that they satisfied their prerequisite to suit and the Charges therefore are central to those very allegations and properly considered at the pleadings stage. To ignore that inquiry would prejudice Twin Peaks as they would be forced to defend against claims that Plaintiffs never had a right to file. Because the SAC includes claims outside the scope of the Charges, and because Plaintiffs failed to name all Defendants in their Charges, they have failed to exhaust their administrative remedies, and their claims and the Twin Peaks Defendants who were never named in the Charges should be dismissed.

C. **Certain Plaintiffs' Title VII And IHRA Claims Must Be Dismissed For Failure To Exhaust Their Administrative Remedies**

Plaintiffs' Title VII claims and IHRA claims must be dismissed because Plaintiffs failed to exhaust their administrative remedies. Mot. at 7-12. Plaintiffs argue that it is inappropriate for the Court to consider these affirmative defenses at the pleadings stage and that they can rely on the single-filing rule to save their Title VII claims. See Opp. at 24-25. As to the IHRA claims, Plaintiffs argue, essentially, that they disagree with the IDHR's Regulations (which have been enacted pursuant to and under authority of the IHRA) and the Court, therefore, should not enforce the Regulations. See Opp. at 19-24. Plaintiffs' arguments are unpersuasive.

1. **Certain Plaintiffs Failed To Exhaust Their Title VII Claims**

First, with respect to the failure of certain plaintiffs to exhaust, Plaintiffs argue that the Court should not consider evidence of failure to exhaust because it is not evident on the face of the SAC, that failure to exhaust is not a jurisdictional defense, and their failure to exhaust should be excused under the single-filing rule. Plaintiffs misstate the law as applied to the facts of this case.

6

Allowing Plaintiffs to evade dismissal because they artfully pled around their failure to exhaust would reward them for misleading the Court and submitting a pleading in which they allege, incorrectly, that they exhausted. Notably, Plaintiffs do not deny that certain Plaintiffs either failed entirely or to timely exhaust. See Opp. at 24-25. Instead, they improperly rely on Fort Bend Cty. v. Davis, 139 S. Ct. 1843, 1849 (2019) for the proposition that a plaintiff may bring a Title VII claim without exhausting. See Opp. at 25. But that was not the holding in that case and the Court specifically held that "[a] claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party 'properly raise[s]' it." Fort Bend, 139 S. Ct. at 1849 (internal citations omitted). The fact that the Court concluded that failure to exhaust was not a jurisdictional defense simply means that a defendant waives the argument by failing to bring it early in a case. Here, Twin Peaks raised its argument in its first response to the SAC, and to the Amended Complaint before that. Therefore, the Court "must enforce the rule" that a party must timely administratively exhaust before bringing a Title VII claim. See id.

Second, Plaintiffs are incorrect that they can avail themselves of the single-filing doctrine, which holds that a plaintiff may be exempt from exhaustion if her claim arises out of the same unlawful conduct as those of other plaintiffs. It is black-letter law that the single-filing doctrine cannot revive time-barred claims. See Griffin v. Sutton Ford, Inc., 452 F. Supp. 2d 842, 847 (N.D. Ill. 2006) (noting that the "the single-filing doctrine cannot revive a stale claim") (collecting cases). Therefore, to the extent a plaintiff who failed to administratively exhaust seeks to rely on the charge of another, she must allege that she experienced the same unlawful conduct in the 300-day lookback period from the earliest filed charge. See Riley-Jackson v. Casino Queen, Inc., No. 07-CV-0631-MJR, 2011 U.S. Dist. LEXIS 18761, *14 (S.D. Ill. Feb. 25, 2011) (a plaintiff who did not exhaust could "recover on her claims for acts occurring more than 300 days before the earliest

charge was filed with EEOC, as long as the acts were part of the same hostile work environment").

Here, the first EEOC charge filed by a plaintiff was dated February 12, 2018. <u>See</u> Declaration of Courtney Fain, dated February 5, 2021, at Ex. A. Thus, plaintiffs who failed to exhaust may be able to avail themselves of the single-filing doctrine only if their claims arose on or after April 18, 2017 (300 days prior). Because each of the plaintiffs who failed to exhaust stopped working well before that date (<u>see</u> SAC, ¶¶ 48, 58, 109, 112, 125, 132, 137, 165), they cannot avail themselves of the single-filing doctrine, and their claims should be dismissed.

**2. Plaintiffs' IHRA Claims Are Time-Barred**

Plaintiffs' claims under the IHRA are time-barred because they failed to provide notice of their right-to-sue to the IDHR within 30 days of receipt of the Notices. Mot., at 9-12. Plaintiffs do not dispute that the Notices were dated December 20, 2019, or that Plaintiffs did not provide notice to the IDHR until May 28, 2020, well beyond the 30-day requirement. Instead, they resort to the same argument they make with respect to all of their barred claims – they did not plead it, and so they should be allowed to force Twin Peaks to litigate claims they know to be untimely. <u>See</u> Opp., at 23, n.15. They also argue, without authoritative support, that no such requirement exists. <u>See</u> <u>id.</u>. Their position is contrary to the governing regulations and case law and should be rejected.

 Plaintiffs' argument that the 30-day requirement should be afforded no weight because it exists in the regulations and not in the text of the IHRA completely ignores well-established case law that requires "where the regulation is clear and unambiguous, [courts] must apply it as written[.]" <u>See</u> <u>Cigna v. Ill. Hum. Rights Comm's</u>, 154 N.E.3d 805 (Ill. 2020). Moreover, while Plaintiffs dismissively refer to Twin Peaks' argument as an "interpretation," the argument is based on two recent cases within this Circuit, both of which are completely analogous on the facts. <u>See</u> Mot. at 12. That the court in <u>Laurie v. William M. Bedell Achievement Res. Ctr.</u>, 2017 U.S. Dist. LEXIS 41536 (S.D. Ill. Mar. 22, 2017), reached a different conclusion does not make the case

8

more well-reasoned; an earlier court simply held, in the absence of any caselaw to the contrary, that the 30-day requirement was not applicable. The other cases Plaintiffs rely upon for the proposition that they satisfied their exhaustion requirement so long as they filed their IHRA claims within 90 days of receiving notice from the IDHR, however, are completely inapposite. First, the court in Schmeirbach v. Alton & S. Ry. Co., No. 18-01684-NJR-GCS, 2019 U.S. Dist. LEXIS 107894 (S.D. Ill. June 27, 2019) did not consider the impact of the 30-day notice requirement and was considering only the fact that plaintiff in that case filed his lawsuit prior to receiving a notice of dismissal from the IDHR. See id. Similarly, the issue in Goldberg v. Chi. Sch. For Piano Tech., NFP, Case No. 14 C 1440, 2015 U.S. Dist. LEXIS 12333 (N.D. Ill. Feb. 3, 2015) did not warrant consideration of the 30-day requirement or even a dual-filed charge. See id., at *5-9.

Having failed to meet the requirement that they give notice to the IDHR within 30 days of receipt of the Notices, Plaintiffs failed to exhaust their IHRA claims, which should be dismissed.

## III.    THE SAC MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A.    Certain Plaintiffs Fail To State A Claim For Discrimination Or Harassment On The Basis Of Sex

Plaintiffs' assertion that they adequately pled an adverse employment action ignores that the adverse employment action claimed must be a result of discrimination based on sex.  In the Opposition Plaintiffs repeatedly cite allegations of ways that they were treated differently from other female employees, but not men.  For example, they allege that if they failed to wear costumes that other female employees were wearing, then they would be sent home, or if they did not meet the appearance standards, they would be assigned less lucrative sections to work than other female employees. Simply put, Plaintiffs have not alleged that they were treated differently than men.

In addition, even if these allegations are found to constitute sex discrimination, Plaintiffs have not sufficiently alleged that they suffered adverse employment actions. To sufficiently allege

an adverse employment action, a plaintiff must allege that the <u>conditions</u> in which they work were <u>changed</u> in a way that subjected them to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in their workplace environment—an alteration that can fairly be characterized as objectively creating a hardship, the classic case being that of the employee whose desk is moved into a closet. <u>See</u> <u>Herrnreiter v. Chicago Hous. Auth.</u>, 315 F.3d 742, 744 (7th Cir. 2002). Certain plaintiffs here have not met this burden, and, therefore, have failed to state a claim for discrimination on the basis of sex.

### B. **Plaintiffs Evans, Frank, Mascorro, Miranda, Sullivan, And Ward Have Not Stated Claims of Hostile Work Environment On The Basis Of Sex**

Courts within this Circuit have held that allegations of hostile work environment fail to state a claim upon which relief can be granted when a plaintiff fails to allege that the defendant's conduct is sufficiently severe or pervasive such that it alters the terms of her employment. Although the severity or pervasiveness of conduct may be a fact question, a plaintiff must establish her entitlement to discovery at the pleading stage. <u>See</u> <u>Inman v. Lemont Pub. Library Dist.</u>, No. 19 C 5282, 2020 WL 5209827, at 7 (N.D. Ill. Sept. 1, 2020). Here, Plaintiffs Evans, Frank, Mascorro, Miranda, Sullivan, and Ward have each failed to plead that the conduct they were subjected to was sufficiently severe or pervasive. Instead these plaintiffs use words like "regularly" throughout their complaint in an attempt to lend credence to the legal conclusion that they were harassed, rather than providing notice to Twin Peaks of the specific conduct that they claim they were subject to.

Additionally, Plaintiffs' reliance on the case of <u>Johnson</u> is unavailing. The <u>Johnson</u> court was being asked to determine whether it could consider allegedly discriminatory comments directed to or overheard by non-plaintiffs. <u>Johnson v. Advocate Health & Hosps. Corp.</u>, 892 F.3d 887, 902 (7th Cir. 2018). The court found that such evidence could be considered. However, the

matter before this court is not one in which comments overheard by non-plaintiffs are offered as evidence that a hostile work environment existed, but rather that plaintiffs making similar allegations to each other support their own claims. The <u>Johnson</u> court did not hold that Plaintiffs may bolster their own allegations by, essentially, vouching for one another to avoid the requirement that they allege a sufficient basis for the court to determine whether they have, <u>individually</u>, adequately pled a hostile work environment.

### C. <u>Certain Plaintiffs' Race Claims Must Be Dismissed</u>

In the Opposition, Plaintiffs concede that Winfield and Moore fail to plead claims for hostile work environment on the basis of race and that Farr and Evans fail to plead claims for race discrimination. <u>See</u> Opp., at 10, n.6. Therefore, the only remaining issues are whether Winfield and Moore plead claims for race discrimination and Farr and Evans plead claims for hostile work environment on the basis of race. They do not, and their claims should be dismissed.

First, although Winfield and Moore argue that they have sufficiently pled claims of race discrimination (<u>see</u> <u>id.</u>, at 10), the actual allegations in the SAC do not say what Plaintiffs now claim they do. Winfield asserts that she never received a raise or an evaluation, but she does not allege that non-black managers received raises or evaluations, or otherwise tie her failure to receive a raise or evaluation to her race. <u>See</u> SAC, ¶ 177. Although she does allege that men and non-black managers received "bonuses larger than what Twin Peaks paid her," she does not allege facts connecting that allegation with racial animus. <u>See</u> <u>id.</u> Finally, Winfield asserts that she was denied a promotion, but does allege any facts suggesting that this was due to her race. <u>See</u> <u>id.</u>, ¶178. The allegation that she was told promoting her was "not a good look for Twin Peaks right now" does not, on its own, give rise to an inference of race discrimination. Moore's allegation that she wanted to be a bartender but a less qualified white woman was chosen instead fares no better. <u>See</u> SAC, ¶145. Notably, Moore never alleges that she applied for the promotion, and she does not allege

any non-conclusory facts indicating that she was denied the promotion because of her race. See id. Because they fail to tie any allegedly adverse action to racial animus, Winfield's and Moore's race discrimination claims should be dismissed.[7]

Second, Evans and Farr have not alleged any facts that even if true, could state a plausible claim for harassment based on race. Evans claims that during her two-year tenure of employment, she was subjected to one comment purportedly made about her hair being an example of what was not the Twin Peaks' standard and management calling her Donna Summers. See SAC, ¶¶157, 159. Even if the Court accepts this fact as true, and concludes the comments were motivated by race, isolated or sporadic comments are insufficient to state a claim for hostile work environment. See Johnson, 892 F.3d at 900. Similarly, Farr's single conclusory allegation that unidentified managers "picked on Farr, treating her differently, and worse, than" non-black workers (see SAC, ¶61) is insufficient even at the pleadings stage because it does not allege conduct that is sufficiently severe or pervasive. The SAC is Plaintiffs' third attempt to plead their claims, and they continue to rely, inappropriately, on isolated incidents that are insufficient to give rise to actionable conduct. Therefore, Evans' and Farr's claims for race harassment must be dismissed.

**D. Frank Fails To State A Claim For Pregnancy Discrimination**

Frank fails to state a pregnancy discrimination claim because she does not allege facts giving rise to an inference of discrimination on the basis of pregnancy and because she does not allege she suffered an adverse employment action. Mot. at 19. Frank argues in the Opposition that she sufficiently pled an adverse employment action because she alleges that she was forced to wear an oversized shirt and that she was assigned less lucrative sections. See Opp., at 18. However,

---

[7] The conclusory nature of their claim is further highlighted by the fact that Moore claims that she was denied opportunity because as an African-American women, she does not look like the ideal Twin Peaks girl, yet she was hired to that very role. The allegation that one had to be white in order to satisfy the Twin Peaks look is, therefore, not plausible; otherwise, she would not have been hired to begin with.

12

Frank does not plead how these alleged changes affected her or that she suffered damages as a result of this conduct. See SAC, ¶65. Further, Frank's allegation that it was because of her pregnancy that she was denied breaks and restricted to eating from the spa menu cannot plausibly state a claim for pregnancy discrimination if the very same pleading admits that non-pregnant women were subjected to the same conduct. Frank has essentially pled herself out of court and her PDA claim should be dismissed. Tamayo v. Blagojevich, 526 F.3d 1074, 1086 (7th Cir. 2008).

### E. Certain Plaintiffs' Retaliation Claims Must Be Dismissed

The Title VII and IHRA retaliation claims of certain plaintiffs must be dismissed for failure to plead a plausible claim for retaliation. Mot. at 19-22.[8] Plaintiffs' argument in opposition is contrary to the facts pled in the SAC and the majority opinion in this Circuit. Although it is true that one "need not plead facts that support each element of her claim," a plaintiff must still plead that "an adverse employment action" occurred "in retaliation for engaging in protected activity." Rosa v. Bd. of Trs. of the Univ. of Ill., 2020 U.S. Dist. LEXIS 233266, *13 (N.D. Ill. Dec. 11, 2020). Against even this liberal standard, the SAC falls short.

First, with respect to Uphoff and Subsits, the majority opinion in this Circuit, as reflected in the most recent caselaw, supports Twin Peaks' position that the refusal of sexual advances is not a protected activity for purposes of a retaliation claim. Mot. at 22. Plaintiffs do not dispute this caselaw, and instead argue that there is some unidentified factual issue that may be relevant. Of course, this is purely a legal issue, and the Court need not wait for the parties to expend time and money in discovery to reach the same conclusion as the majority of courts within this Circuit.

---

[8] Plaintiffs bring a retaliation claim on behalf of all plaintiffs except Ward, Fuller, Reed, and Temesvary. See SAC, ¶241.

Second, the retaliation claims of certain plaintiffs fail because complaints about an employer's policies are not protected complaints where there is no allegation that the complaint was that such policies were discriminatory or harassing based on a protected characteristic. Plaintiffs do not allege that they complained that the dress code or toning policy were discriminatory or harassing. The fact that those policies may have applied to women only does not mean that any complaint about them was a complaint of unlawful discrimination or harassment. Where, as here, Plaintiffs complained about a working condition but did not complain that the working condition was discriminatory because of their gender, the complaints do not constitute protected activity as a matter of law. See Mot. at 21.

Third, the failure of certain plaintiffs to allege, *as required*, "how . . . when . . . or to whom they complained" is fatal to their retaliation claim, and their reliance on EEOC v. Concentra is misplaced. First, the Seventh Circuit did not rule that a plaintiff may state a retaliation claim merely by stating that she complained that "'supervisors were subjecting female employees to a hostile work environment or some similar phrase.'" See Concentra, 496 F.3d at 781. Rather, the Seventh Circuit offered a hypothetical set of facts that "would give Concentra a much clearer idea of [plaintiff's] claim" while still affirming dismissal of the complaint, holding that it "fails to provide the notice required by Rule 8(a)(2)" because it fails to allege "additional details" and "facts" that are "easily provided" and "clearly important." See id. As the Seventh Circuit explained, "to permit the [retaliation claims]," where there is no detail regarding how, when or to whom plaintiffs complained, "would reward obfuscation, a perverse result." See id.

Finally, there is no contextual or factual dispute that must be resolved before determining whether Winfield met her pleading burden. Winfield does not allege in the SAC that she made a protected complaint. Rather, her sole allegation is that she posted on Snapchat that "she intended

14

to be treating everyone equally." SAC, ¶ 181. A public declaration (which she does not even allege was seen by Twin Peaks) that one intends to treat everyone equally is not a complaint, but rather an affirmation. No additional context can change the fact that she did not plead that she made a protected complaint under Title VII or the IHRA.[9]

### F. Certain Plaintiffs' Disability Claims Must Be Dismissed

Twin Peaks argues in the Motion that Clements, McBride, and Litavsky failed to plead claims for disability discrimination and that Clements and McBride fail to plead claims for hostile work environment on the basis of disability. Mot., at 23. Plaintiffs concede that Clements and McBride do not bring claims for hostile work environment on the basis of disability and that Clements does not bring a claim for disability discrimination. See Opp., at 12, n.7. Thus, the only remaining issue is whether McBride and Litavsky sufficiently plead claims for disability discrimination.[10] They do not. Specifically, neither Litavsky nor McBride plead facts giving rise to an inference that the alleged conduct to which they were subjected, including being removed from shifts and lowering her tone grade, was motivated by any animus based on disability. See SAC, ¶72 , ¶189. Therefore, their disability discrimination claims must be dismissed.

### CONCLUSION

For the reasons stated herein, and in the Motion, Twin Peaks respectfully request the Court grant its Motion and any such other relief as the Court deems proper.

---

[9] For these reasons, the Title VII and IHRA retaliation claims of Bidochka, Blaylock, Clements, Evans, Farr, Faynshteyn, Hurtado, Litavsky, Marrotta, Mascorro, Miranda, Moore, Mercer, Peck, Rodriguez, Rucker, Santellanes, Subsits, Sullivan, Uphoff, Villegas, and Winfield must be dismissed. Twin Peaks withdraws its argument with respect to Biggers.

[10] Twin Peaks did not move to dismiss any of the plaintiffs' claims for failure to accommodate.

Dated: February 5, 2021

PADUANO &
WEINTRAUB LLP
*/s/ Courtney Fain*
Meredith Cavallaro
Courtney Fain
1251 Avenue of the
Americas, 9th Floor
New York, New York, 10020
Tel: 212.785.9100
Fax: 212.785.9099
mc@pwlawyers.com
cf@pwlawyers.com

LAPOINTE LAW, P.C.

*/s/ Ines M. Monte*
Ines M. Monte
Christopher W. Sheekey
1200 Shermer Road
Suite 425
Northbrook, IL 60062
Tel: 847.786.2508
Fax: 847.786.2650
imonte@lapointelaw.com
csheekey@lapointelaw.com

O'HAGAN MEYER, LLC

*/s/ Kristine S. Phillips*
Kristine S. Phillips
Bryan White
One E. Wacker, Suite 3400
Chicago, IL 60601
Tel: 312.422.6100
Fax: 312.422.6110
kphillips@ohaganmeyer.com
bwhite@ohaganmeyer.com

## CERTIFICATE OF SERVICE

This is to certify that on this 5th day of February, 2021, I electronically filed **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE TWIN PEAKS DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**, with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

**ATTORNEYS FOR PLAINTIFFS**
Tamara N. Holder
The Law Firm of Tamara N. Holder LLC
917 W. Washington St., Ste. 222
Chicago, IL 60607
tamara@tamaraholder.com

Johanna (Josie) Raimond
Law Offices of Johanna J. Raimond, Ltd.
431 S. Dearborn, Ste. 1002
Chicago, IL 60605
jraimond@raimondlaw.com

**ATTORNEYS FOR DEFENDANT FRONT BURNER RESTAURANTS, LP:**
Stephanie A. Jones
Katherine P. Decker
Patrick Moran
Gordon Rees Scully Mansukhani, LLP
1 N. Franklin St., Ste. 800
Chicago, IL 60606
sfjones@grsm.com
kdecker@grsm.com
pmoran@grsm.com

**ATTORNEYS FOR DEFENDANTS TWIN RESTAURANT, LLC, et al:**
Meredith Cavallaro
Courtney Fain
Paduano & Weintraub LLP
1251 Avenue of the Americas, 9th Floor
New York, New York, 10020
Tel: 212.785.9100
Fax: 212.785.9099
mc@pwlawyers.com
cf@pwlawyers.com

17

Ines Monte
Christopher W. Sheekey
LaPointe Law, P.C.
1200 Shermer Road, Suite 425
Northbrook, IL 60062
imonte@lapointelaw.com
csheekey@lapointelaw.com

_/s/ Bryan W. White_
Kristine S. Phillips
Bryan W. White
O'Hagan Meyer, LLC
One E. Wacker Dr., Ste. 3400
Chicago, IL 60601
kphillips@ohaganmeyer.com
bwhite@ohaganmeyer.com

**ONE OF THE ATTORNEYS FOR
DEFENDANTS TWIN RESTAURANT,
LLC, ET AL.**